In re Charles D. GOFORTH, Sr., a/k/a Charles Delaney Goforth, Sr., a/k/a Charles D. Goforth, Sr., d/b/a Fink's Potato Service, a/k/a Charles D. Goforth, d/b/a Fink's Potato Service and Bonnie Inez Cradic Goforth, a/k/a Bonnie Inez Goforth, a/k/a Bonnie I. Goforth, Debtors.

**TRI–CITY BANK AND TRUST COMPANY, Plaintiff,**

v.

**Charles D. GOFORTH, Sr., Bonnie Inez Goforth, and Ward Huddleston, Trustee, Defendants.**

Bankruptcy No. 3–80–01588.
Adv. Proc. No. 3–81–0918.

United States Bankruptcy Court, E.D. Tennessee.

Oct. 12, 1982.

Hal A. Masengill, Blountville, Tenn., for plaintiff.

Timothy R. Wilkerson, Kingsport, Tenn., for defendants Charles D. Goforth, Sr., and Bonnie Inez Goforth.

Ward Huddleston, Kingsport, Tenn., for the trustee.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This action concerns the entitlement to proceeds from the settlement of a lawsuit commenced by the defendant debtors, prior to the filing of their chapter 7 bankruptcy

petition, to recover damages to real and personal property formerly owned by them and mortgaged to the plaintiff. It is the plaintiff's theory that it is entitled to the net proceeds of the settlement because the value of its lien was reduced as a result of the damage to its security property. The defendants assert that the plaintiff's rights are purely contractual and that the plaintiff does not have a cause of action since the deeds of trust and the security agreement executed by them in favor of the plaintiff are silent on the application or appropriation of funds recovered for damage to the encumbered property caused by a third party. The defendants also assert there is no proof in the record that the adequacy of the plaintiff's security was impaired by the blasting which damaged the property.

### I

On July 11, 1978, Charles D. Goforth, Sr., and Bonnie I. Goforth, husband and wife, executed two promissory notes, in the total principal sum of $185,000.00, in favor of plaintiff Tri-City Bank and Trust Company. Concurrently with the execution of their promissory notes, the Goforths executed a first deed of trust against five parcels of real estate situated in Sullivan County, Tennessee. A third promissory note was executed in favor of the plaintiff by the Goforths on July 16, 1980. This note, in the principal amount of $100,000.20, was secured by a second deed of trust against four of the five parcels of real estate which were previously mortgaged on July 11, 1978, and a security interest in several motor vehicles.

A complaint was filed on October 9, 1980, on behalf of the Goforths, d/b/a Fink's Potato and Produce Company, and against Tri-City Airport Commission and Brown Bros. Construction, Inc. The Goforths alleged therein that they owned and operated a business in the proximity of the area in which Brown Bros. had performed blasting operations in conjunction with an expansion project of Tri-City Airport. The Goforths further alleged that their real and personal property had been damaged as a direct result of the blasting and requested actual and punitive damages.

A voluntary chapter 7 bankruptcy petition was filed by the Goforths on December 15, 1980. The trustee in bankruptcy, Ward Huddleston, undertook the prosecution of the debtors' cause of action for the property damage caused by the blasting at the site of the Tri-City Airport expansion. The trustee in bankruptcy and the debtors, on an unknown date, released the alleged tortfeasors from any liability in consideration of a settlement payment of $26,000.00, which was paid to the trustee in bankruptcy. One-third (1/3) of the amount of the settlement payment and the sum of $148.00 for expenses have been disbursed by the trustee in bankruptcy to the attorney who represented the debtors and the trustee in the blasting case. The entitlement to the balance of the settlement proceeds, approximately $17,200.00, is at issue.

### II

Plaintiff filed two separate proofs of claim on January 13, 1981. The amount of the claim secured by the July 11, 1978, first deed of trust was $156,276.00. Plaintiff's second proof of claim reflected a claim in the amount of $73,087.46 secured by the July 16, 1980, junior deed of trust on four parcels and the security agreement on certain motor vehicles.

The trustee in bankruptcy abandoned any interest of the estate in the security vehicles, which were sold on April 25, 1981, for the aggregate amount of $36,550.00. Net proceeds in the amount of $32,131.11 were applied to the plaintiff's claim against the debtors.

The trustee in bankruptcy also abandoned any interest of the estate in a 1.33-acre tract with improvements thereon. (The improvements were the business buildings of the debtors which had been damaged by the blasting.) This 1.33-acre tract was subject to the first deed of trust of the plaintiff, who was the successful bidder, on the basis of a bid of $80,000.00, at the July 25, 1981, public foreclosure sale. Net proceeds from this sale in the amount of $74,369.90 were applied against the indebtedness of the debtors to the plaintiff.

The trustee in bankruptcy sold the remainder of the debtors' real property which was encumbered by the plaintiff's two deeds of trust on July 25, 1981 for the sum of $63,500.00. The trustee in bankruptcy paid $55,167.00 to the plaintiff from the proceeds of that sale on October 27, 1981.

A two-acre tract, adjoining the 1.33-acre tract abandoned by the trustee, was purchased by the plaintiff at the bankruptcy trustee's sale for the sum of $23,000.00. On April 21, 1982, the plaintiff sold these two tracts for the sum of $180,000.00. These same two tracts had previously been appraised, at the request of the trustee in bankruptcy, to have a fair market value of $205,625.00 as of March 23, 1981.[1] The plaintiff has offered to reduce the amount of its claim against the debtors by $64,097.48, which is the amount equal to the difference between the sale price it received for the two tracts ($180,000.00) and its costs and expenses incurred in acquiring and selling the two tracts ($115,902.52).[2]

This offer by the plaintiff to reduce its claim by the amount of $64,097.48 is illusory. The plaintiff contends that the unpaid balance on both of its claims after the proffered reduction is $21,863.47. Since this sum exceeds the amount of the controverted settlement proceeds and those proceeds represent the only property remaining which could possibly reduce the debtors'

indebtedness to the plaintiff, the plaintiff's offer is *apparently* inconsequential and made at no expense to the plaintiff's interest, unless the indebtedness is nondischargeable—such a claim has not been interposed—or a dividend will be available for the holders of unsecured claims.

■ However, a review of the attachment to the Pre-Trial Order which details the computations, prepared by plaintiff and not stipulated by the defendants, reflecting the appropriation of payments discloses that the plaintiff's unpaid claim of $21,863.47 includes $18,534.90 in postpetition interest. 11 U.S.C.A. § 506(b) (1979) provides in part: "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim ...." The sum of the claims filed by the plaintiff was $229,364.06,[3] whereas the liquidation of all of the collateral for its claim only produced $180,050.00.[4] If the latter sum represents the value of the property securing the plaintiff's claim, the plaintiff is not entitled to include postpetition interest in the amount of its claim because its claim was undersecured.[5]

The court has three options in determining the value of the property which formerly secured the claim of the plaintiff against

---

1. The appraised value was not stipulated by the plaintiff in the Pre-Trial Order. The appraisal included the sum of $15,000.00 estimated as the value of a walk-in cooler. The record does not disclose whether or not the cooler was removed prior to the plaintiff's July 25, 1981, foreclosure sale. The 1.33-acre tract, exclusive of the cooler, was appraised at $165,625.00 as of March 23, 1981. The appraiser estimated the fair market value of the two-acre tract, purchased by plaintiff at the bankruptcy trustee's sale for $23,000.00 on July 25, 1981, to be $25,000.00 as of March 23, 1981.

2. This latter sum consists of the following charges:

| | | |
|---|---|---|
| 1) Purchase price of the 1.33–acre tract | – | $ 80,000.00 |
| 2) Purchase price of the two-acre tract | – | 23,000.00 |
| 3) 1980 property taxes | – | 1,716.43 |
| 4) Recording of deeds | – | 286.80 |
| 5) Insurance (between 11/7/81 and 5/6/82) | – | 356.00 |
| 6) Repair to waterline | – | 45.00 |
| 7) Electric bill (between 8/81 and 4/82) | – | 445.21 |
| 8) Interest expense at 12.5% APR | – | 10,053.08 |
| | | $115,902.52 |

3. This sum does not include any portion of the $18,534.90 subsequently claimed by the plaintiff for postpetition interest.

4. 11 U.S.C.A. § 506(c) (1979) authorizes the trustee to recover reasonable, necessary costs and expenses connected with the disposal of property securing an allowed secured claim to the extent of any benefit to the holder of such a claim. The net proceeds available from the liquidation of all of the plaintiff's collateral were only $161,678.01.

5. The value of the plaintiff's lien against the security property clearly would not have been impaired by the blasting damage to the extent that the value of the security exceeded the amount of the secured indebtedness.

the debtors.[6] The court may find that the amount of this value is equal to: (i) the amount generated by liquidation of the security property ($180,050.00), or (ii) the amount generated by liquidation plus the profit which the plaintiff made upon the sale of the 1.33-acre tract and the two-acre tract ($244,147.88), or (iii) some intermediate amount.

There is a substantial disparity between the gross investment of the plaintiff in the 1.33-acre tract and the adjoining two-acre tract and the sale price which the plaintiff received upon the sale of those two tracts nine months after their acquisition. The amount of the difference between the two figures is $64,097.48. The record does not reflect the terms of the sale of the two tracts by the plaintiff. It is possible that favorable financing arrangements contributed to increase the difference between the gross investment of the plaintiff and the sale price. It is also possible that the value of the property was enhanced by new improvements or the repair of existing improvements. These are matters of pure conjecture and speculation, however, since there is no evidence in the record on such matters.[7]

No objection to the propriety of either the plaintiff's nonjudicial foreclosure of the 1.33-acre tract or the sales by the trustee in bankruptcy has been raised. A foreclosure sale is conclusive if the sale is conducted in good faith and strict fairness. *Union Joint Stock Land Bank v. Knox County,* 97 S.W.2d 842, 845 (Tenn.Ct.App. 1936), *cert. denied.* Since the propriety of the liquidation sales is unchallenged, the court concludes that the value of the property securing the plaintiff's claim is the liquidation value, $180,050.00, exclusive of the proceeds at issue.

III

A cause of action against a negligent third party for damages to mortgaged chattels exists in favor of the mortgagor and the mortgagee. *Ellis v. Snell,* 44 Tenn. App. 294, 313 S.W.2d 558 (1955), *cert. denied; Harris v. Seaboard Air Line Ry. Co.,* 190 N.C. 480, 130 S.E. 319 (1925). However, absent fraud or collusion, there may be only one recovery from the negligent third party. The mortgagee has the superior right to the receipt of a settlement payment, *Id.* 130 S.E. at 322, provided that there is no equity in the damaged chattels above the interest of the mortgagee. *Watkins v. Kaolin Mfg. Co.,* 131 N.C. 536, 42 S.E. 983 (1902). These principles are clearly applicable insofar as any damage which may have occurred to the personal property held as security by the Bank. The court believes that the principles are equally applicable with regard to the damage to the real estate and the improvements thereon.

As previously noted, the amount of the plaintiff's claim against the debtors on the date of their bankruptcy petition was $229,364.06. Also, as previously noted, the value of the real and personal property held by the Bank as security, excluding any consideration of the contested proceeds, was only $180,050.00. Since the blasting damage preceded the filing of the debtors' bankruptcy petition, the value of the plaintiff's lien was diminished and impaired by the blasting damage.

There is no Tennessee authority on point on the issue of the respective rights of a mortgagor and a mortgagee to the proceeds of a settlement paid by third party tort-feasors for damages to security real estate. However, the logic of the *Harris* decision, which involved an automobile, is persuasive. Additionally, the first deed of trust required the debtor-mortgagors to

---

**6.** No valuation hearing was requested or conducted in the debtors' case.

**7.** The absence of such evidence is understandable since the parties believed that the balance of the plaintiff's claim ($21,863.47) exceeded the amount of the contested net proceeds even after reducing the claim by the amount of $64,-

097.48. The defendants did not challenge the plaintiff's claim for $18,534.90 in postpetition interest. Such a challenge would have amounted to an admission of the inadequacy of the value of the security property to satisfy the plaintiff's claim.

maintain insurance on the property in the sum of at least $185,000.00. There must have either been existing or anticipated improvements upon the security real estate at the time of the execution of the deed of trust. The plaintiff would have relied upon the value, present or prospective, of any such improvements when the loan was extended and the deed of trust was accepted as security therefor. It would be inequitable to deny the plaintiff's claim to the settlement proceeds in this case since the liquidation proceeds were insufficient to satisfy the amount of the plaintiff's claim against the debtors.[8] The plaintiff is entitled to the net proceeds from the settlement of the blasting case.

■ The debtors have asserted a superior interest in the settlement proceeds on the basis of Tenn.Code Ann. § 26–2–111(2)(B) (1980). The claim is entirely without merit because the provision under which they claim an exemption concerns personal bodily injury and no such injury is presented in the record.

This Memorandum constitutes Findings of Fact and Conclusion of Law, Bankruptcy Rule 752.

---

**8.** The plaintiff's offer to reduce its claim by $64,097.48, the amount of its net profit on the sale of the 1.33-acre and adjoining two-acre tract, was made gratuitously. No case authority has been discovered which would arguably require the plaintiff to credit the account of the debtors with the amount of this profit other than *Wade's Heirs v. Harper,* 11 Tenn. (3 Yer.) 383 (1832), which may be factually distinguished.

The court believes that the plaintiff's offer to reduce the unpaid balance on its claim was made on the mistaken belief that even after subtracting $64,097.48 the balance on its claim (i.e. $21,863.47) would exceed the amount of the contested proceeds (approximately $17,-200.00). However, the unpaid balance of $21,-863.47 claimed by the plaintiff, after the gratuitous reduction, includes $18,534.90 in postpetition. interest which must be disallowed. The *plaintiff is not entitled to postpetition interest* since the amount of its claim exceeded the value of its security, 11 U.S.C.A. § 506(b) (1979). None of the security administered by the trustee was income-producing and the estate is insolvent. Yet, it would be incongruous to conclude that the balance of the plaintiff's unsatisfied claim is only $3,328.57, the difference between $21,863.47 and $18,534.90, after having determined that the debtors owed the plaintiff $229,364.06 when they filed their bankruptcy petition and that the value of the security for that claim, exclusive of the disputed proceeds, was only $180,050.00.