Olaf T. STEVENSEN, Jr., and Barbara Ann Stevensen, et al., Plaintiffs and Appellants,

v.

Raymond L. GOODSON, James Foulger, and Richard Danley, as individuals and dba 221 East Second South Partners, et al., Defendants and Appellees.

ROCKY MOUNTAIN CONTRACTORS, INC., a corporation, Third–Party Plaintiff and Appellee,

v.

BECHO, INC., a Utah corporation, Third–Party Defendant and Appellee.

Raymond L. GOODSON, James Foulger, and Richard Danley as individuals and dba 221 East Second South Partners, et al., Third–Party Plaintiffs and Appellees,

v.

BECHO, INC., a Utah corporation, et al., Third–Party Defendants and Appellees.

No. 940025.

Supreme Court of Utah.

Aug. 20, 1996.

David J. Hodgson, Salt Lake City, for the Stevensens.

J. Craig Carman, Salt Lake City, for Danley and Foulger.

Wendell E. Bennett, Jeannine Bennett, Salt Lake City, for 221 East Second South Partners.

John R. Lund, Julianne Blanch, Salt Lake City, for Rocky Mountain Contractors.

Robert K. Hilder, Karra J. Porter, Salt Lake City, for Architect–Planners, Thomas Evans, Warden, Evans & Hill.

Herschel P. Bullen, Salt Lake City, for Becho.

John A. Snow, Salt Lake City, for BH Mortgage.

Raymond L. Goodson, pro se.

RUSSON, Justice:

Olaf Stevensen and his wife Barbara Stevensen appeal from a directed verdict in favor of Rocky Mountain Contractors, Inc. (Rocky Mountain), summary judgments in favor of Rocky Mountain, Architect–Planners, Inc./Warden, Evans & Hill, and Thomas Evans (Warden, Evans & Hill), and Becho, Inc. (Becho), and a partial summary judgment in favor of Raymond Goodson, James Foulger, and Richard Danley as individuals and as the sole partners of 221 East Second South Partners (the 221 partners). The trial court dismissed all of the Stevensens' claims, which alleged that during a construction project on adjoining land, defendants unlawfully damaged property in which the Stevensens held a security interest. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

■ In reviewing grants of directed verdicts and summary judgments, we view all facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *See Nay v. General Motors Corp.,* 850 P.2d 1260, 1261 (Utah 1993); *Winegar v. Froerer Corp.,* 813 P.2d 104, 107 (Utah 1991). We recite the facts accordingly.

In January 1984, the Stevensens entered into an agreement with the 221 partners to sell to them their Salt Lake Athletic Club in Salt Lake City, Utah, including the attendant real estate, personalty, and business property (collectively, the Salt Lake Athletic Club).[1] Pursuant to the agreement, the 221 partners were to continue operation of the Salt Lake Athletic Club as a health club and maintain the premises and facilities in good repair and prevent the commission of "waste, spoilage, or destruction" in or upon the premises so long as any part of the purchase price or interest remained unpaid. The Stevensens retained legal title pending full payment of the purchase price but only as a security interest. Thus, the 221 partners acquired equitable title. Indeed, in their appellate briefs, all parties agree that the purchase

agreement was in essence a mortgage agreement, giving the Stevensens rights as mortgagee and the 221 partners rights as mortgagor.

Subsequently, the 221 partners initiated a plan to develop a parcel of land they owned which was adjacent to the Salt Lake Athletic Club. On this land, the 221 partners planned to construct an underground parking garage and a thirteen-story office building to be known as 257 Towers. The 221 partners retained the architectural firm of Warden, Evans & Hill to design and direct the construction. In addition, the 221 partners hired Rocky Mountain to build the structure. Rocky Mountain subcontracted with Becho to participate in the construction of the garage.

Construction of the parking facility required a deep excavation. To complete the excavation without risking damage to surrounding property, Becho built a shoring wall and a series of tie-backs to hold the wall and the earth behind it in place. The tie-backs were metal and concrete rods affixed to the shoring wall and placed sixty to eighty feet laterally into the ground. Some of the tie-backs were placed underneath the Salt Lake Athletic Club.

In April 1984, while a tie-back was being placed beneath the Salt Lake Athletic Club, the club building was damaged. Cracks appeared in the walls, floors, and ceiling. The plumbing and swimming pools were also damaged. Upon discovery of the damage, the 221 partners arranged for limited repairs. The partners opted to mend only a cracked basement wall through steel bracing and smaller fissures through cosmetic restoration. The total repair cost was $4,769.81 and was paid by Becho.

In exchange for payment, Becho obtained a release from James Foulger, one of the 221 partners, and Rocky Mountain. The release stated:

[The Salt Lake Athletic Club and Rocky Mountain] hereby release and discharge [Becho] and all other persons and entities

1. The Stevensens originally contracted to sell the Salt Lake Athletic Club to the Panos Group, a party not involved in the instant lawsuit, and the 221 partners assumed the Panos Group's rights

and obligations. In addition, the 221 partners entered into a separate purchase agreement directly with the Stevensens.

from all claims and demands, actions and causes of action, damages, costs, loss of services, loss of income, expenses and compensation on account of or in any way growing out of, or resulting or which may result from an accident that occurred on or about the 14th day of April, 1984 at or near 255 East 200 So. Salt Lake City or arising out of any other act or omission of releasees occurring prior to the effective date of this document.

The release was dated February 21, 1985.

In mid–1985, the 221 partners experienced financial problems and ceased operation of the Salt Lake Athletic Club. Also at this time, the Stevensens discovered the damage caused in April 1984.

In August 1985, after the 221 partners failed to make payments to the Stevensens in accord with the purchase agreement, the Stevensens commenced the lawsuit that led to this appeal. They alleged that the 221 partners breached the purchase agreement by failing to continue operation of the Salt Lake Athletic Club, failing to keep the club in good repair, failing to prevent damage to the club, failing to pay property taxes, and failing to make purchase payments. The Stevensens also alleged that by authorizing the encroaching tie-backs and other structures, the partners had unlawfully impaired the Stevensens' security interest in the mortgaged property. The Stevensens sought monetary damages and foreclosure of the property.

The Stevensens' complaint also alleged tortious conduct by other parties involved in the 257 Towers construction project. Against the general contractor, Rocky Mountain, and the architectural firm, Warden, Evans & Hill, the Stevensens claimed that due to the

wrongful and negligent placement of the tie-backs and other structures, these parties had unlawfully impaired the Stevensens' security interest by trespassing and encroaching upon the Salt Lake Athletic Club. Following its inclusion as a defendant, Rocky Mountain filed a third-party complaint against Becho, seeking indemnification and contribution if found liable to the Stevensens.[2] The Stevensens also alleged that Beverly Hills Savings & Loan Association and its affiliate BH Mortgage Company,[3] which financed and, at the time the Stevensens filed their complaint, owned 257 Towers, caused damage to the Salt Lake Athletic Club by failing to remove the encroaching structures from the athletic club property.[4]

During the pendency of the Stevensens' lawsuit, two of the 221 partners, James Foulger and Richard Danley, filed for bankruptcy. Raymond Goodson, the third 221 partner, entered into a partial settlement with the Stevensens. Thereafter, the Stevensens no longer pursued their breach of contract claims, except for their action against the 221 partners to foreclose on the Salt Lake Athletic Club. In fact, in a January 9, 1994, order, the trial court indicated that these claims were no longer pending.

On July 18, 1989, BH Mortgage requested that the Stevensens' unlawful impairment of their security interest claim be tried separately. A pretrial conference was held on August 16, 1989, attended by the Stevensens' attorney and attorneys for BH Mortgage, the 221 partners, Rocky Mountain, Becho, and Warden, Evans & Hill.[5] With agreement of counsel, the trial court scheduled for jury trial on October 23, 1989, "[t]he issues of whether or not there is an unlawful impairment of [the Stevensens'] security interest in

---

2. The 221 partners also filed a third-party complaint against Becho. In addition, they filed a third-party complaint against Edmund W. Allen dba E.W. Allen and Associates, who was also a subcontractor on the 257 Towers project. This party, however, is not involved in this appeal.

3. According to the Stevensens, their claims against Beverly Hills Savings & Loan and BH Mortgage were later settled, and therefore, these parties are not involved in this appeal.

4. Gunnin/Campbell Consulting Engineers, which furnished structural engineering services for 257

Towers, was also a defendant. Zions First National Bank, S. Dee Long, Geiger of Austria, Ron Case Roofing and Asphalt, Inc., and First Interstate Bank of Utah were joined as plaintiffs because they had interests in the Salt Lake Athletic Club. None of these parties, however, are involved in this appeal.

5. First Interstate Bank and Zions First National Bank were also represented at the pretrial conference.

the Salt Lake Athletic Club property by the existence of the shoring wall and tie-back system [and other structures], and, if so, the damages resulting therefrom."

This first trial proceeded at the time scheduled against the 221 partners, Rocky Mountain, Warden, Evans & Hill, and BH Mortgage on the issue of whether the placement of the tie-backs and related structures impaired the Stevensens' security interest in the Salt Lake Athletic Club. However, the Stevensens objected to the involvement of parties other than BH Mortgage, claiming unfair surprise. The Stevensens claimed that the trial court's scheduling order provided that a separate trial would be held only to resolve the Stevensens' unlawful impairment claim against BH Mortgage. The trial court, finding no ambiguity in its scheduling order, disagreed and overruled the Stevensens' objection. The trial proceeded.

At the close of the Stevensens' case-in-chief, Rocky Mountain and Warden, Evans & Hill moved for directed verdicts pursuant to rule 50(a) of the Utah Rules of Civil Procedure. Rocky Mountain contended that it could not have unlawfully impaired the Stevensens' security interest since it had the permission of the 221 partners, the equitable owners of the Salt Lake Athletic Club property, to engage in the construction that caused the damage. The trial court, reasoning that the Stevensens' security interest in the Salt Lake Athletic Club property was binding only upon the parties who entered into the mortgage agreement, concurred and dismissed the Stevensens' claims against Rocky Mountain "for trespass, encroachment and unlawful impairment of [the] security interest." The trial court also granted Warden, Evans & Hill's motion because the Stevensens had not shown that the architects breached the applicable standard of care.

Thereafter, the trial court was presented with an oral settlement agreement involving the Stevensens, BH Mortgage, and the 221 partners as to the unlawful impairment of the Stevensens' security interest claims against BH Mortgage and the 221 partners. Terms of the settlement were stated on the record and agreed to by the parties. In fact, counsel for the parties all agreed that "the stipulation fairly and totally and completely resolve[s] all remaining issues in this phase of the litigation." The trial court accepted the settlement, ordered the settling parties to reduce their agreement to writing, and thus concluded the first trial.

Later, however, it appeared that BH Mortgage, the 221 partners, and the Stevensens could not agree on the precise wording of the settlement agreement. On several occasions, the parties sought a court-imposed resolution. Ultimately, the trial court ordered the parties to accept a draft agreement prepared by BH Mortgage because it approximated the oral agreement presented during the first trial. However, neither the parties on appeal nor the record reveals whether the parties complied with the order and executed the settlement agreement. Moreover, no order dismissing the claims tried against BH Mortgage and the 221 partners appears in the record. Nevertheless, the parties never mentioned, either on the record or on appeal, that the claims tried against BH Mortgage and the 221 partners had yet to be resolved.

In any event, at the time the trial court excused the jury, thereby ending the first trial, the parties believed that the issues regarding the impairment of the Stevensens' security interest had been resolved. Thereafter, there was some confusion as to whether the Stevensens had any unresolved claims other than their action to foreclose upon the Salt Lake Athletic Club against the 221 partners. Rocky Mountain, for example, subsequently argued to the trial court that it should be dismissed as a defendant because any claims against it had been resolved by the trial court's directed verdict in its favor. The trial court, however, disagreed and, for some reason not disclosed by either the record or the parties' appellate briefs, scheduled for a second trial an issue strikingly similar to issues purportedly resolved during the first trial. According to the trial court's April 28, 1992, scheduling order, the issues remaining for trial included the foreclosure action and

[w]hether the Stevensens' security interest in the property which consisted of a building, personal property and business located at 158 South 300 East, Salt Lake City,

Ut [i.e., the Salt Lake Athletic Club] has been damaged by defendants and, if so, the responsibility therefore [sic] and the extent and amount of the damages which the Stevensens have incurred.[6]

Before the second trial, the 221 partners, Rocky Mountain, and Warden, Evans & Hill moved for summary judgments as to the claims that, although apparently resolved during the first trial, were scheduled for the second trial. These defendants based their motions on the release that immunized Becho "and all other persons and entities" from liability. The trial court granted the motions, reasoning that the plain language of the release expressly discharged Becho "and all other persons and entities from all claims and demands."

In December 1993, pursuant to rule 54(b) of the Utah Rules of Civil Procedure, the trial court certified as final, appealable judgments its directed verdicts in favor of Rocky Mountain and Warden, Evans & Hill as to the unlawful impairment of the Stevensens' security interest claims and its summary judgments in favor of the 221 partners, Rocky Mountain, and Warden, Evans & Hill dismissing the Stevensens' "further claims." With only their foreclosure action remaining, the Stevensens appealed.

On appeal, the Stevensens argue that (1) the trial court erred in ordering a separate trial for the unlawful impairment of their security interest claims; (2) the trial court erred by unexpectedly expanding the scope of the trial to include the Stevensens' claims against the 221 partners, Rocky Mountain, and Warden, Evans & Hill; (3) during the trial, the trial court erred in striking the opinion of the Stevensens' expert witness; (4) the trial court erred in directing a verdict for Rocky Mountain because the Stevensens had a cause of action against it for unlawfully damaging their security interest; and (5) the trial court erred as a matter of law in granting the motions for summary judgment based on the release because the Stevensens were not a party to the release and the release

should not be construed to protect those it did not specifically name.

The appellees respond that (1) the trial court did not abuse its discretion in ordering a separate trial for the unlawful impairment of the Stevensens' security interest claims because all parties, including the Stevensens, agreed to the bifurcation procedure; (2) the scope of the bifurcated trial was not improperly expanded because the scheduling order made clear that the trial would encompass all defendants against whom the Stevensens asserted unlawful impairment of their security interest claims; (3) the trial court did not abuse its discretion in striking the opinion of the Stevensens' expert because the opinion was speculative and lacked foundation; (4) the trial court did not err in directing a verdict for Rocky Mountain because the Stevensens could not maintain their unlawful impairment claim against it—they did not possess the property at the time the alleged damage occurred and Rocky Mountain was not a party to the mortgage agreement; and (5) the trial court correctly determined that the release barred the Stevensens' remaining tort claims and immunized all defendants from liability. As independent grounds to affirm the trial court's directed verdict and summary judgments, appellees argue that the Stevensens are either judicially or collaterally estopped from claiming that they suffered injury.

## II. ANALYSIS

 The first issue is whether the trial court erred in ordering a separate trial for the Stevensens' unlawful impairment of their security interest claims. Rule 42(b) of the Utah Rules of Civil Procedure provides, "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim ... or of any separate issue or of any number of claims ... or issues." "Severance is within the sound discretion of the trial court and, absent abuse of such discretion, will not be upset on appeal." *King v. Barron,* 770 P.2d 975, 976 (Utah 1988) (citing

6. In comparison, the first trial was scheduled to resolve

[t]he issues of whether or not there is an unlawful impairment of [the Stevensens'] security

interest in the Salt Lake Athletic Club property by the existence of the shoring wall and tieback system [and other structures], and, if so, the damages resulting therefrom.

Utah R.Civ.P. 42(b)); *see Coleman v. Dillman*, 624 P.2d 713, 716 (Utah 1981).

In this case, the record amply supports the trial court's ruling. In its scheduling order, the trial court stated, "The parties suggested and the Court concurred that certain claims should be bifurcated for trial, and the parties stipulated to the schedule set forth below for the first trial." Following this statement, the trial court ordered:

> The issues of whether or not there is an unlawful impairment of [the Stevensens'] security interest in the Salt Lake Athletic Club property by the existence of the shoring wall and tie-back system ..., and, if so, the damages resulting therefrom are set for jury trial commencing Monday, October 23, 1989.

Representing the Stevensens at the settlement conference and agreeing with the schedule was the Stevensens' attorney. Moreover, the Stevensens did not object to the order's recital of their agreement with the trial schedule. For these reasons, we find that the trial court did not abuse its discretion in ordering a separate trial.

■■■ The next issue is whether the trial court improperly overruled the Stevensens' objection regarding the scope of the bifurcated trial. The Stevensens contend that the trial court's scheduling order did not provide them with notice that the trial was to include the 221 partners, Rocky Mountain, and Warden, Evans & Hill and therefore they had insufficient time to prepare their case. Resolution of this issue requires an examination and interpretation of the trial court's scheduling order. Since appellate courts are in as good a position as trial courts to interpret court rulings, including scheduling orders, we will review the trial court's interpretation of its order for correctness. *See Provo River Water Users' Ass'n v. Morgan*, 857 P.2d 927, 931 (Utah 1993); *accord State v. Richardson*, 843 P.2d 517, 518 (Utah Ct.App.1992) ("[W]e consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness.").

In this case, the trial court ordered a separate trial to occur in October 1989 to resolve "[t]he issues of whether or not there is an unlawful impairment of [the Stevensens'] security interest in the Salt Lake Athletic Club property by the existence of the shoring wall and tie-back system ..., and, if so, the damages resulting therefrom." Plainly, the scheduling order contemplated that the Stevensens' claims alleging damages as a result of the construction of the office building were to be tried in October 1989. Moreover, the Stevensens made these claims against all of the defendants engaged in the bifurcated trial. Thus, the scheduling order gave the Stevensens notice that claims against the 221 partners, Rocky Mountain, and Warden, Evans & Hill would be tried in October 1989. We therefore uphold the trial court's decision overruling the Stevensens' objection to the scope of the trial.

■■■ The next issue is whether the trial court improperly excluded the opinion of the Stevensens' expert witness. During the bifurcated trial, the Stevensens adduced an opinion from their structural engineering expert concerning the extent of the damage to the Salt Lake Athletic Club resulting from the tie-backs. The expert testified that a stressed tendon from one of the tie-backs could penetrate the office building's foundation and damage any structure on the adjacent land. However, on cross-examination, the expert admitted that the probability of this occurrence could be altered on the basis of many factors, the existence or nonexistence of which he was unaware. For example, the expert confessed ignorance as to the strength of the concrete that formed the foundation walls of the office building, the quantity of steel bracing in the concrete, and whether and to what extent the tendons were fixed in place by grout, all of which would make it less likely that tendons could penetrate the foundation and damage nearby structures. In addition, in response to the question "So we don't know if a tie-back would penetrate the foundation, do we?" the expert responded, "We don't know that." Subsequently, the following exchanged occurred:

> Q. So we can go back to this question, your opining that a tendon could shoot through the foundation of the 257 [Towers

building] is basically speculation at this point, it is a mere possibility, true?

A. Correct.

At that point, one of the defense attorneys moved to strike the opinion portion of the expert's testimony from the record on the grounds of no foundation and speculation. After taking the matter under advisement and hearing more testimony from the expert, the trial court granted the motion and directed the jury to disregard the expert's opinion.

Rule 702 of the Utah Rules of Evidence provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." " 'The trial court is allowed considerable latitude of discretion in the admissibility of expert testimony, and in the absence of a clear showing of abuse, this court will not reverse.' " *Rees v. Intermountain Health Care, Inc.*, 808 P.2d 1069, 1078 (Utah 1991) (quoting *Lamb v. Bangart*, 525 P.2d 602, 607–08 (Utah 1974)); *see also Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 923 (Utah 1990) ("In reviewing questions of admissibility of evidence at trial, deference is given to the trial court's advantageous position; thus, that court's rulings regarding admissibility will not be overturned 'unless it clearly appears that the lower court was in error.' " (quoting *State v. Gray*, 717 P.2d 1313, 1316 (Utah 1986))).

In this case, the trial court did not abuse its discretion in excluding the expert's opinion. According to the Stevensens, the expert's opinion was adduced to show that future structures on the athletic club property would have to be designed and constructed for the contingency that the foundation of the 257 Towers building could be pierced by a tendon from one of the tie-backs underneath it. However, the expert testified that he did not know if such a penetration could occur. In addition, the expert admitted that his opinion regarding the occurrence of such an event was "basically speculation." Therefore, the trial court did not abuse its discretion in striking the expert's opinion from the record.

■ The next issue is whether the trial court erred in directing a verdict in favor of Rocky Mountain on the Stevensens' unlawful impairment of their security interest claim. "We reverse a directed verdict when the evidence, taken in a light most favorable to the nonmoving party, is sufficient to permit a reasonable jury to find for the nonmovant." *Nay v. General Motors Corp.*, 850 P.2d 1260, 1263 (Utah 1993) (citing *Gourdin By and Through Close v. Sharon's Cultural Educ. Recreational Ass'n*, 845 P.2d 242, 243 (Utah 1992); *Management Committee of Graystone Pines Homeowners Ass'n v. Graystone Pines, Inc.*, 652 P.2d 896, 897–98 (Utah 1992); *Taylor v. Keith O'Brien, Inc.*, 537 P.2d 1022, 1022 (Utah 1975)).

The Stevensens maintain that because Rocky Mountain did not have permission to build the structures, including the tie-backs, on the athletic club property, it should be held liable for the impairment of their security interest by reason of its encroachment and trespass.

■ First, it is important to note that irrespective of whether Rocky Mountain had permission, the Stevensens lack the requisite standing to maintain a cause of action premised upon either trespass or encroachment. Any claim based on trespass was properly dismissed because the Stevensens did not have possession. To bring a claim predicated on trespass, a plaintiff must have possession of the land trespassed upon. "Trespass ... is a possessory action. In order to maintain an action of trespass, 'the plaintiff must, at the time of the trespass, have been in actual or constructive possession of the land on which the acts of trespass were committed.' " *Wood v. Myrup*, 681 P.2d 1255, 1257 (Utah 1984) (emphasis omitted) (quoting *John Price Assocs., Inc. v. Utah State Conference*, 615 P.2d 1210, 1214 (Utah 1980)). The Stevensens did not have possession of the Salt Lake Athletic Club during the construction of the office building. Rather, the Stevensens had only a security interest in the property. This is insufficient to maintain a cause of action on the basis of trespass.

■ The Stevensens' impairment claim also fails to the extent that it was based upon Rocky Mountain's alleged encroachment of

the Salt Lake Athletic Club. A cause of action based upon encroachment is of the nature of either a continuing trespass or a nuisance. 2 C.J.S. *Adjoining Landowners* § 40 (1972). To the extent that the Stevensens' claim alleges a continuing trespass, their claim fails since the Stevensens did not have possession, a prerequisite to maintaining a claim premised on trespass.

To the extent that the Stevensens' impairment claim was based upon an alleged private nuisance,[7] it also fails because the Stevensens had an insufficient interest in the subject property. A cause of action predicated upon private nuisance seeks compensation for damages caused by a substantial and unreasonable interference with the private use and enjoyment of land. *Sanford v. University of Utah,* 26 Utah 2d 285, 291, 488 P.2d 741, 744–45 (1971); Restatement (Second) of Torts § 821D (1979). According to a majority of authorities, only possessors, owners, or occupiers of land may be impaired in their use and enjoyment of land and, therefore, recover for a nuisance. *See Okaw Drainage Dist. v. National Distillers & Chem. Corp.,* 882 F.2d 1241, 1247 (7th Cir. 1989) (applying Illinois law); *Swearingen v. Long,* 889 F.Supp. 587, 592–93 (N.D.N.Y. 1995) (applying New York law); *Meizoso v. Bajoros,* 12 Conn.App. 516, 531 A.2d 943, 944 (1987); *Gray v. Westinghouse Elec. Corp.,* 624 N.E.2d 49, 53 n. 3 (Ind.Ct.App.1994); *Culwell v. Abbott Constr. Co.,* 211 Kan. 359, 506 P.2d 1191, 1194 (1973); *Vicksburg Chem. Co. v. Thornell,* 355 So.2d 299, 301 (Miss. 1978); *Drouin v. Ridge Lumber, Inc.,* 209 A.D.2d 957, 619 N.Y.S.2d 433, 435–36 (1994); *Bowers v. Westvaco Corp.,* 244 Va. 139, 419 S.E.2d 661, 667 (1992); *Arnoldt v. Ashland Oil, Inc.,* 186 W.Va. 394, 412 S.E.2d 795, 803

(1991) (applying Kentucky law); 58 Am. Jur.2d *Nuisances* § 256 (1989); 66 C.J.S. *Nuisances* § 82 (1950); Restatement (Second) of Torts § 821E(c) (1979). *But see Cook v. Rockwell Int'l Corp.,* 778 F.Supp. 512, 516 (D.Colo.1991) (holding that mortgagee may maintain a cause of action for nuisance because Colorado does not limit action to owners, occupiers, or possessors of land). We agree with the majority view and thus hold that a plaintiff alleging a private nuisance must have at least a possessory, occupancy, or ownership interest in the impacted land.[8]

In this case, the Stevensens neither possessed, occupied, nor owned the Salt Lake Athletic Club. They were merely lien holders, not title holders. *Bybee v. Stuart,* 112 Utah 462, 470, 189 P.2d 118, 122–23 (1948); *accord Interstate Land Corp. v. Patterson,* 797 P.2d 1101, 1106 (Utah Ct.App.1990). Thus, the Stevensens' impairment claim fails to the extent that it was based upon Rocky Mountain's alleged encroachment.

The Stevensens claim, however, that they have a cognizable claim against Rocky Mountain for unlawful impairment of their security interest that need not be predicated upon either trespass or encroachment. Although Utah has never recognized such a cause of action, many authorities state that a mortgagee may maintain a cause of action against a third party who damages the mortgaged property and thereby impairs its security interest. 55 Am.Jur.2d *Mortgages* § 300 (1971); 59 C.J.S. *Mortgages* § 338 (1949); III Gerrard Glenn, *Mortgages, Deeds of Trust, and Other Security Devices as to Land* § 452 (1943); Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* ¶ 453[2] (1995); David A. Thomas, *Thompson*

---

7. We assume the Stevensens' claim would be more in the nature of a private nuisance rather than a public nuisance. A public nuisance is one affecting " 'an interest common to the general public, rather than peculiar to one individual, or several.' " *Solar Salt Co. v. Southern Pac. Transp. Co.,* 555 P.2d 286, 289 (Utah 1976) (quoting W. Prosser, *Law of Torts* 606). A private nuisance is a substantial and unreasonable nontrespassory interference with the private use and enjoyment of land. *Sanford v. University of Utah,* 26 Utah 2d 285, 291, 488 P.2d 741, 744–45 (1971). Because the Stevensens have alleged injury only to themselves, we will treat its claim

as if it alleged a private nuisance rather than a public one.

8. This statement does not suggest that future occupants of impacted lands may bring private nuisance actions. We have found no Utah decision where a plaintiff with only an occupancy interest was recognized as having sufficient interest to maintain such an action, and we do not so hold here. We state only that one who has neither a possessory, an ownership, nor an occupancy interest may not maintain such an action.

on *Real Property* § 101.02(d)(2) (1994). Even those states that treat mortgagees as mere lien holders recognize a cause of action for the unlawful impairment of a mortgagee's security interest. *See Cornelison v. Kornbluth,* 15 Cal.3d 590, 125 Cal.Rptr. 557, 567–68, 542 P.2d 981, 991–92 (1975) (en banc); *Moseley v. Bi–Lo Supermarket, Inc.,* 341 So.2d 222, 223 (Fla.Dist.Ct.App.1976) (per curiam); *Terry v. C.B. Contracting Co.,* 388 S.W.2d 349, 350–51 (Mo.Ct.App.1965); *McCorristin v. Salmon Signs,* 244 N.J.Super. 503, 582 A.2d 1271, 1273 (App.Div.1990); *Blancob Constr. Corp. v. 246 Beaumont Equity, Inc.,* 23 A.D.2d 413, 261 N.Y.S.2d 227, 231 (1965). The apparent rationale behind the cause of action is that such an action is necessary when the mortgagor cannot or will not seek relief from third parties who cause damage to the mortgaged property. *See* David A. Leipziger, *The Mortgagee's Remedies for Waste,* 64 Cal.L.Rev. 1086, 1093 (1976).

However, courts recognizing an action for unlawful impairment of a mortgagee's security interest generally limit the mortgagee's action to accord with its purpose. One limitation, particularly in states that view mortgagees as merely lien holders, not title holders, is that the mortgagee may recover only to the extent its security interest is actually impaired. Since a mortgagee has neither possession of nor title to the mortgaged property, it may not maintain an action to recover for damage to the premises. The mortgagee's recovery is limited to the extent of the impairment of its security interest. *See Allstate Finance Corp. v. Zimmerman,* 272 F.2d 323, 325 (5th Cir.1959). And it follows that if the mortgage debt is adequately secured by the value remaining in the property, the mortgagee has not been damaged and has no cause of action. *See id.; In re Goforth,* 24 B.R. 100, 104 (Bankr. E.D.Tenn.1982); *Terry,* 388 S.W.2d at 350–51. Accordingly, in jurisdictions recognizing this cause of action, a mortgagee may not maintain an action to recover damages to its security interest if that interest has not been impaired.

Another limitation imposed on the cause of action for unlawful impairment of a security interest is that the third party's damaging act must be unlawful or contrary to statutory or case law. Accordingly, in states recognizing the cause of action, a third party cannot be liable for damage caused intentionally where the third party has the permission, express or implied, from the owner of the premises to perform the intended act. *See W & R Inv. Co. v. Edwards Supply Co.,* 304 Mass. 650, 24 N.E.2d 518, 519 (1939); 59 C.J.S. *Mortgages* § 338 (1949). In such a case, the mortgagee has an action against the mortgagor for causing waste, i.e., the destruction, misuse, or alteration of the premises. Thus, in states recognizing a cause of action for unlawful impairment of a mortgagee's security interest, third parties cannot be liable to the mortgagee to the extent that they had the consent of the mortgagor owner.

In light of these limitations, even if we were to recognize the Stevensens' theory of recovery, their claim fails. First, under their own theory, to be liable for impairing a mortgagee's security interest, the mortgaged property must be damaged to such an extent that the property no longer constitutes adequate security for the mortgagor's debt. In this case, although the Stevensens submitted evidence that the property itself was damaged, they provided no evidence that the Salt Lake Athletic Club was so damaged that it could no longer secure the 221 partners' remaining debt. Since the Stevensens were not the equitable owners of the Salt Lake Athletic Club, under their own theory of recovery, they cannot maintain an action to recover for damage done to the property but only for damage done to their security interest.

Second, the Stevensens' theory requires that Rocky Mountain impaired its security interest *unlawfully.* However, Rocky Mountain arranged for the placement of the shoring wall, the tie-backs, and the other encroaching structures at the behest of the 221 partners, the equitable owners of the Salt Lake Athletic Club. Richard Danley, one of the 221 partners, gave uncontroverted testimony at the trial that the shoring wall, tie-backs, and other structures constructed for the 257 Towers building were built by Rocky

Mountain "with the approval of the 221 Partners." Thus, to the extent that Rocky Mountain had the permission of the 221 partners, it cannot be held liable to the Stevensens for the damage caused by the placement of these structures.

In sum, even if we were to recognize a cause of action for unlawful impairment of a mortgagee's security interest, the trial court's directed verdict in favor of Rocky Mountain must be upheld. The Stevensens have simply failed to demonstrate two of the requisite elements of the claim—that Rocky Mountain damaged the property to such an extent that the property could no longer provide security for the 221 partners' remaining debt and that Rocky Mountain did so unlawfully.

The remaining issues concern the propriety of the trial court's summary judgments granted prior to the second trial in favor of Rocky Mountain, the 221 partners, and Warden, Evans & Hill pursuant to the release. In granting summary judgment for these defendants, the trial court dismissed any further claims the Stevensens had against these defendants other than their foreclosure action against the 221 partners. In its scheduling order for the second trial, the trial court had stated that these claims involved

> [w]hether the Stevensens' security interest in the property which consisted of a building, personal property and business located at 158 South 300 East, Salt Lake City, Ut [i.e., the Salt Lake Athletic Club] has been damaged by defendants and, if so, the responsibility therefore [sic] and the extent and amount of the damages which the Stevensens have incurred.

However, this issue was apparently resolved during the first trial by either directed verdicts in favor of Rocky Mountain and Warden, Evans & Hill or a settlement agreement between the Stevensens and BH Mortgage and the 221 partners. The first trial purportedly resolved

> [t]he issues of whether or not there is an unlawful impairment of [the Stevensens'] security interest in the Salt Lake Athletic Club property by the existence of the shoring wall and tie-back system [and other

structures], and, if so, the damages resulting therefrom.

The summary judgments do not state, nor do the parties explain, what exact claims were dismissed by the trial court's summary judgments. However, all parties seem to acknowledge that pending claims were yet to be resolved. Therefore, we will proceed to review the trial court's summary judgments.

Prior to the second trial, Rocky Mountain, the 221 partners, and Warden, Evans & Hill moved for summary judgments on the basis of the release executed on February 21, 1985, between the 221 partners, Rocky Mountain, and Becho. The 221 partners, Rocky Mountain, and Warden, Evans & Hill argued that they fell within the release language purporting to immunize the releasee "and all other persons and entities from all claims and demands." The trial court agreed and granted the motions on that basis.

On review of a grant of summary judgment, the inquiry is, in addition to whether there is any genuine issue as to any material fact, whether the movant is entitled to judgment as a matter of law. *Andreini v. Hultgren*, 860 P.2d 916, 918 (Utah 1993). The trial court's legal conclusions are reviewed for correctness. *Id.*

The Stevensens argue that the trial court erred in concluding, first, that they were bound by a release they never entered into and, second, that the release operated to immunize from liability Rocky Mountain, the 221 partners, and Warden, Evans & Hill, parties not specifically named in the release as releasees. In response, these defendants argue that the Stevensens are bound by the release because they are not the equitable owner of the Salt Lake Athletic Club, but only a lien holder. In addition, these defendants argue that they fall within the release because it purports to hold harmless "all other persons and entities." Moreover, they maintain, such blanket protection was necessary because at the time of the agreement, joint and several liability had not yet been abolished in Utah by the Liability Reform Act of 1986. *See* Utah Code Ann. §§ 78–27–38, 78–27–40; *Sullivan v. Scoular Grain Co. of Utah*, 853 P.2d 877, 880 (Utah 1993). If Becho had obtained a release for itself only,

defendants conclude, others might still be liable and Becho might have to compensate these parties under a cause of action for indemnification or contribution.

■ The Stevensens' first challenge to the summary judgments is that they were not bound by a release into which they did not enter. However, many jurisdictions maintain that a nonfraudulent settlement or recovery by the mortgagor from the third party tort-feasor precludes a recovery by the mortgagee. *See American Savs. & Loan Ass'n v. Leeds,* 68 Cal.2d 611, 68 Cal.Rptr. 453, 456 n. 2, 440 P.2d 933, 936 n. 2 (1968) (en banc); 55 Am.Jur.2d *Mortgages* § 300 (1971); 59 C.J.S. *Mortgages* § 338 (1949). When the mortgagor receives the recovery or settlement proceeds, he must hold it in trust for the mortgagee to the extent of the outstanding debt. *See American Savs. & Loan Ass'n,* 68 Cal.Rptr. at 456 n. 2, 440 P.2d at 936 n. 2.

Regardless of whether we ultimately decide to recognize a cause of action in favor of mortgagees for impairment of their security interests, we adopt the above rule for four reasons. First, when a third party's act damages property, there should be only one settlement or cause of action with that party to avoid double payments by that party if the mortgagor absconds with the recovery.

Second, third parties should not be placed in a more onerous position than the mortgagor. For example, the mortgage agreement in this case did not obligate the 221 partners to notify the Stevensens of damage to the property. However, a rule allowing the Stevensens to recover from a third party after that party settled with the 221 partners would impose that duty upon strangers to the mortgage agreement. In any lawsuit or settlement negotiation between the 221 partners and the third party, the third party would have had to secure the Stevensens' participation. Otherwise, that party would be subject to double liability if it settled with the partners and the partners then absconded with the settlement proceeds rather than applying the proceeds to its debt.

In addition, this rule is followed by a majority of courts when confronted with situations where collateral securing chattel mort-

gages is damaged by third parties. *See Scholfield Bros. v. State Farm Mut. Auto. Ins. Co.,* 242 Kan. 848, 752 P.2d 661, 664–66 (1988); *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.,* 792 S.W.2d 626, 629 (Ky.Ct. App.1990); *Fidelity Fin. Servs. v. Blaser,* 889 P.2d 268, 271 (Okla.1994); *Chrysler Credit Corp. v. Smith,* 434 Pa.Super. 429, 643 A.2d 1098, 1102, *appeal denied,* 539 Pa. 664, 652 A.2d 834 (1994); *International Harvester Credit Corp. v. Valdez,* 42 Wash.App. 189, 709 P.2d 1233, 1235–36 (1985). No reason exists to support a different rule for real property mortgages, especially in Utah where mortgagees are regarded as mere lien holders. *Bybee,* 112 Utah at 470, 189 P.2d at 122–23; *Patterson,* 797 P.2d at 1106.

Finally, the 221 partners' obligation to hold the proceeds in trust for the Stevensens to the extent of the outstanding debt is sufficient protection for the Stevensens. After all, it was the Stevensens who, in the first instance, chose their debtor.

■ In sum, a nonfraudulent settlement entered into by the mortgagor is binding upon the mortgagee. Put differently, unless the settlement is fraudulently drafted to impair the rights of the mortgagee, the mortgagee stands in the same position as the mortgagor against third parties who unlawfully impair the mortgaged property. Thus, since there is no allegation that the settlement was fraudulent, the Stevensens are bound by the release to the same extent that the 221 partners are bound.

■ The Stevensens' next challenge to the summary judgments is that the release could not operate to immunize the 221 partners, Rocky Mountain, and Warden, Evans & Hill because they were not specifically named as releasees. Recently, we were confronted with a similar issue. In *Child v. Newsom,* 892 P.2d 9 (Utah 1995), we applied section 78–27–42 of the Utah Code, which provides, "A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides." *Id.* at 10–11. We found that the statute was enacted to discard the common law rule that a release of one tort-feasor would release all tort-feasors and

concluded that releases "must contain language either naming the defendant or identifying the defendant with some degree of specificity in order to discharge that defendant from liability." *Id.* at 12. "Holding otherwise," we stated,

> would necessarily run contrary to the statute's purpose by allowing general release language which does not name or specifically identify a particular tort-feasor to discharge that tort-feasor. Such an approach would effectively perpetuate the common law by permitting boilerplate language in a release discharging one tort-feasor to discharge all other tort-feasors in direct opposition to the very statute that was enacted to prevent this from occurring.

*Id.* at 11.

Defendants here assert that *Child v. Newsom* should not apply because the release in that case was executed after joint and several liability had been abolished by the Liability Reform Act. However, defendants ignore the fact that the holding in *Child* was not premised upon the abolition of joint and several liability, but upon the relevant language and legislative history of section 78–27–42 which was substantially the same at the time the release in this case was executed.

Section 78–27–42 was enacted in similar form to its current form in 1973. The 1973 version provided, "A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors, *unless the release so provides....*" Utah Code Ann. § 78–27–42 (1985) (emphasis added). Moreover, the statute as passed in 1973 was enacted "to change the common law rule so that release of one joint tort-feasor did not automatically release all tort-feasors." *Krukiewicz v. Draper,* 725 P.2d 1349, 1351 (Utah 1986). Thus, the rationale in *Child* supporting the requirement of specificity in a release existed as early as 1973. Holding that the 221 partners, Rocky Mountain, and Warden, Evans & Hill are discharged by the release would "direct[ly] oppos[e] . . . the very statute that was enacted to prevent this from occurring." *Child,* 892 P.2d at 11. Therefore, defendants' argument is unavailing, and the trial court's purported reason for granting the summary judgments is erroneous.[9]

This brings us to the final issue on appeal. As an alternate basis to affirm the trial court's summary judgments in favor of Rocky Mountain, the 221 partners, and Warden, Evans & Hill, these defendants seek to invoke the doctrines of judicial estoppel and collateral estoppel. Defendants contend that all of the Stevensens' claims against them seek compensation for damages caused to their security interest. Such damages, defendants maintain, were the subject of an earlier judicial proceeding. Following Mr. Stevensen's discovery of the damage to the Salt Lake Athletic Club, in the bankruptcy action initiated by two of the 221 partners, Mr. Stevensen testified as a creditor party that the club was worth $2.2 million, even in its damaged state. Defendants assert that only $1.4 million in debt remained. Thus, defendants maintain, Mr. Stevensens' prior testimony reveals that the Stevensens' mortgage agreement is adequately secured by the club property, and they are judicially estopped from asserting otherwise. Defendants also argue that the Stevensens are collaterally estopped from asserting that the Salt Lake Athletic Club is worth less than the value previously attributed to it by the bankruptcy court, $710,000.

■■■ Defendants' judicial estoppel argument is unavailing. The principle of judicial estoppel prevents a party from seeking judicial relief by uttering statements inconsistent with its own sworn statement in a prior judicial proceeding. *Condas v. Condas,* 618 P.2d 491, 495–96 (Utah 1980). However,

---

9. The Stevensens also urge us to decide whether the release immunizes Becho from liability. Becho likewise successfully moved to dismiss claims made against it pursuant to the release, but the claims were asserted by other defendants. The Stevensens seek the reversal of the trial court's order dismissing the claims against Becho. However, to have standing to challenge this dismissal, the Stevensens must experience some distinct and palpable injury giving rise to a personal stake in the outcome of the dispute. *See Provo City Corp. v. Willden,* 768 P.2d 455, 457 (Utah 1989). The Stevensens asserted no claims against Becho. Therefore, they have experienced no injury and have no standing to challenge the ruling.

the rule followed in Utah requires that the party seeking judicial relief must have prevailed upon its statement in the earlier proceeding: " '[A] person may not, to the prejudice of another person deny any position taken in a prior judicial proceeding between the same persons or their privies involving the same subject-matter, *if such prior position was successfully maintained.*' " *Salt Lake City v. Silver Fork Pipeline Corp.*, 913 P.2d 731, 734 (Utah 1995) (emphasis added) (quoting *Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 515, 132 P.2d 388, 390 (1942)). In this case, Mr. Stevensen's prior valuation of the Salt Lake Athletic Club at $2.2 million was not successfully maintained. The bankruptcy court judge found that the property's value was far less. Indeed, the Stevensens may have pursued their claims for unlawful impairment of their security interest in the trial court because of their inability to obtain relief in bankruptcy court. Therefore, judicial estoppel cannot form an alternate basis to affirm the trial court's directed verdict and summary judgments.

Defendants' collateral estoppel argument is equally unavailing. Collateral estoppel, sometimes referred to as issue preclusion, prevents parties from relitigating issues resolved in a prior related action. *Timm v. Dewsnup*, 851 P.2d 1178, 1184 (Utah 1993). The party seeking to invoke this doctrine must satisfy four requirements:

> First, the party must show that the issue challenged in the case at hand is identical to the issue decided in the previous action. Second, the issue in the previous action must have been decided in a final judgment on the merits. Third, the issue in the previous action must have been competently, fully, and fairly litigated. Fourth, the opposing party in the action at hand must have been either a party or privy to the previous action.

*Sevy v. Security Title Co.*, 902 P.2d 629, 632 (Utah 1995).

In this case, defendants cannot prevail through collateral estoppel because nothing in the record shows that the prerequisites of the doctrine have been met. Defendants rely upon statements made during the bankruptcy action to assert their estoppel claims. However, the record of that action was not made a part of the record in this case.

A similar issue was confronted by this court in *Parrish v. Layton City Corp.*, 542 P.2d 1086 (Utah 1975). There, the court held that the summary judgment movant could not avail himself of the doctrine of res judicata, which subsumes the doctrine of collateral estoppel, because the record of the former adjudication was not made a part of the record in the case at bar. *Id.* at 1087. "Since the record of the prior action was not before the trial court, there is no basis to sustain the determination that plaintiff's claim was barred by the doctrine of res judicata." *Id.*

The same impediment precludes affirming on collateral estoppel grounds in this case. Here, a complete record of the bankruptcy proceedings was not made a part of the record in the instant case. Therefore, nothing in the record shows that the elements of collateral estoppel have been met. *Accord Chapman v. Chapman*, 728 P.2d 121, 122–23 (Utah 1986) (per curiam) (refusing to consider answers to interrogatories not made a part of the record to determine if there was an issue of material fact). For example, with regard to the second element, the Stevensens vigorously dispute whether the issue in the bankruptcy action was decided in a final judgment on the merits since they claim that no bankruptcy discharge was obtained. And since nothing on file shows that the second requirement of the collateral estoppel doctrine was satisfied, defendants' collateral estoppel argument cannot constitute an alternate ground to affirm the trial court's directed verdict and summary judgments.

## III. CONCLUSION

We affirm the trial court's rulings wherein it (1) correctly ordered a separate trial for the Stevensens' unlawful impairment of their security interest claims; (2) correctly ordered that the trial should include the 221 partners, Rocky Mountain, and Warden, Evans & Hill; (3) correctly excluded the opinion of the Stevensens' expert witness; and (4)

correctly directed a verdict in favor of Rocky Mountain on the Stevensens' unlawful impairment of their security interest claims. However, the trial court erroneously granted summary judgments in favor of the 221 partners, Rocky Mountain, and Warden, Evans & Hill pursuant to the release. We therefore reverse the summary judgments and remand for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur.