Michael J. **GRAFTON** and **Werner Enterprises, Inc., Appellants,**

v.

**SHIELDS MINI MARKETS, INC., Appellee.**

No. 2009–CA–001862–MR.

Court of Appeals of Kentucky.

Jan. 14, 2011.

Rehearing Denied March 28, 2011.

Discretionary Review Denied by Supreme Court Sept. 15, 2011.

307

Gene F. Zipperle, Jr., Louisville, KY, for appellant.

John S. Kelley, Jr., Bardstown, KY, for appellee.

Before CAPERTON and WINE, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

Michael J. Grafton and Werner Enterprises, Inc. (Appellants) appeal from the Nelson Circuit Court's entry of summary judgment in favor of Shields Mini Markets, Inc. (Appellee) as to Appellee's property-damage claim against Appellants. At issue is whether a non-fraudulent property-damage settlement between a mortgagor of real property and a third-party tortfeasor bars a mortgagee from recovering damages in a subsequent property-damage claim against that same tortfeasor. For reasons that follow, we hold that it does. Therefore, the judgment of the circuit court must be reversed and this cause remanded for entry of judgment in favor of Appellants.

### Facts and Procedural History

The parties do not dispute the underlying facts of this case. Appellee is a Kentucky corporation with Jean C. Shields as its president. On November 1, 2000, Appellee conveyed fee simple title to a parcel of real estate located in Bloomfield, Kentucky to Dwight and Debra Mason. The property contained a convenience store that had previously been operated by Appellee. In exchange, the Masons executed a promissory note promising to pay Appellee the sum of $147,900 plus interest. The note was secured by a mortgage on the

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

subject property, with Appellee designated as the mortgagee.

According to Jean C. Shields, the Masons made only two of the required mortgage payments and then gave her a "cold check" to cover the owed installment for February 1, 2001. Ms. Shields was advised by Dwight Mason to take the check back to the bank, but she indicated that the check was rejected multiple times. However, Appellee declined to seek foreclosure at this point.

On June 18, 2002, Grafton, an employee of Werner, struck the convenience store on the subject property as he attempted to turn his tractor trailer around in the parking lot. Ms. Shields learned about the incident through the local police department and her attorney, Jack Seay, either on the day the accident happened or at some time later that week. However, Ms. Shields made no effort to intercede in the ensuing insurance settlement negotiations between the Masons and Appellants or to seek foreclosure because Seay had told her "that there would be a check coming and it had [her] name and Dwight's name on it and that would cover" the damage to the convenience store. Seay represented the Masons in their dealings with Appellants, but he had also represented Appellee in the earlier mortgage transaction and had essentially set up that arrangement. Ms. Shields further indicated that Seay continued to make assurances that the matter "would be taken care of [and] not to worry about it, so I didn't worry about it." Consequently, at no time did Ms. Shields or anyone acting on behalf of Appellee speak with a representative of Appellants or an insurance adjuster acting on their behalf about the subject accident and the resulting property damage.

On September 13, 2003, Appellants and Dwight Mason executed a release and set-

tlement agreement ("Release of All Claims") resolving the Masons' claim for damages. This agreement provided that the Masons would release, acquit, and forever discharge Werner and its agents or servants from any and all claims, actions, causes of actions, and damages of any kind, known or unknown, resulting from the subject accident in exchange for $35,000. Neither Ms. Shields nor Appellee was a party to the settlement nor were they listed as such on the Release of All Claims or on the settlement check. Instead, the check was made out to Dwight Mason, Seay, and April & Trevor, Inc.[2]

According to Seay, he never asked that Ms. Shields's or Appellee's name be placed on any settlement documents or checks during his negotiations with the independent claims adjuster handling the Masons' insurance claim against Appellants. Seay recalled advising the adjuster that there was a mortgage on the property, but there was never any formal notification to this effect nor was this fact a critical part of the negotiations. John Skinner, the independent adjuster, indicated that he did not recall being told about a mortgage or any interest by Ms. Shields or Appellee (although there is some evidence to the contrary) and that he took it for granted that Dwight Mason was the owner of the property since he had represented himself as such. Skinner also noted that in his experience it was never the practice to include a mortgagee or lien holder on a settlement draft unless he was explicitly instructed to do so by the attorney with whom he was in negotiations.

On July 10, 2003, shortly before the release and settlement agreement were executed, Appellee filed a foreclosure action against the Masons in Nelson Circuit Court because of their failure to make mortgage payments. Seay did not repre-

---

**2.** April & Trevor, Inc. was the name of the Masons' corporation.

sent Appellee in this action. Appellee obtained a summary judgment and order of sale against the Masons as to the subject property on December 8, 2003. Appellee subsequently re-acquired the property for $85,000 at a master commissioner's sale.[3]

On June 23, 2004, Appellee filed its own action against Appellants for damages resulting from the accident of June 18, 2002. Appellants subsequently filed a motion for summary judgment alleging that Appellee could not recover any additional damages as a matter of law because: (1) the previously-executed release and settlement agreement barred Appellee from recovering any additional damages from Appellants; and (2) Appellee had no right to recover additional damages because it was not the actual owner of the property at the time of the accident and the resulting settlement. Appellee subsequently filed its own motion for summary judgment in which it argued that: (1) a third-party tortfeasor was obligated to include a mortgagee in any settlement that the tortfeasor reached with a mortgagor; (2) Appellants had knowledge of the subject mortgage; and (3) Appellee was not bound by the "Release of All Claims" because it was not a party to that release.

On September 22, 2008, the Nelson Circuit Court denied Appellants' motion for summary judgment and granted Appellee's motion for summary judgment. The circuit court specifically held that Appellee was not bound by the "Release of All Claims" because it was not a party and because the Masons could not have asserted any claim for an impairment to Appellee's security interest. The circuit court ultimately found Appellants liable to Appellee jointly and severally for $35,000 plus interest after the parties agreed to stipulate that Appellee could not recover more than the earlier settlement amount. Appellants' motion for reconsideration was denied. This appeal followed.

### Standard of Review

The standards for reviewing a circuit court's entry of summary judgment are well-established and were concisely summarized by this Court in *Lewis v. B & R Corp.*, 56 S.W.3d 432 (Ky.App.2001):

> The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial."

*Id.* at 436 (Internal footnotes and citations omitted). Because summary judgments involve no fact finding, we review the circuit court's decision *de novo.* *3D Enters. Contr. Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky.2005); *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000).

### Analysis

■ There is no existing Kentucky authority on point as to the respective rights

---

**3.** The property had an appraised value of $125,000—$95,000 for the actual real estate and $30,000 for the business inventory.

of a mortgagor and a mortgagee to the proceeds of a property-damage settlement paid by a third-party tortfeasor for damages to real property securing an unpaid debt. Thus, this is a case of first impression, and this Court must determine if a non-fraudulent property-damage settlement between a third-party tortfeasor and a mortgagor of real property bars the mortgagee from a ·subsequent property-damage recovery against that same tortfeasor.

■■■ As an initial matter, we are compelled to address the question of who actually "owned" the subject property at the time of the Masons' property-damage settlement. Kentucky law has long subscribed to the "lien theory" of mortgages and holds that "a mortgage is a mere security for debt, and that, substantially, both at law and in equity, the mortgagor is the real owner of the property mortgaged." *Watts' Adm'r v. Smith*, 250 Ky. 617, 63 S.W.2d 796, 800 (1933) (Citation omitted); *see also, e.g., Whittaker v. Farmers' Nat. Bank of Somerset*, 237 Ky. 596, 36 S.W.2d 18, 19 (1931). Thus, mortgages are treated no differently than any other lien and, generally, mortgagors—not mortgagees—are considered the owners of mortgaged property.[4]

■■ Accordingly, upon default a mortgagor's interest in real property is not forfeited. Rather, the mortgagee has only a security interest, and ownership of the premises remains with the mortgagor and subject to the mortgagor's right to redeem the property by paying the full debt plus interest and expenses incurred by the creditor due to default. *Bolen v. Bolen*, 169 S.W.3d 59, 64 (Ky.App.2005), *quoting Sebastian v. Floyd*, 585 S.W.2d 381, 383

(Ky.1979); *see also* KRS 426.005; KRS 426.525.

At the time the Masons settled their property-damage claim with Appellants, Appellee's foreclosure action against the Masons had not been resolved. The Masons were still the owners of the property, and even ·though apparently in default on their mortgage, they were entitled to settle their property-damage claim with Appellants. As such, the question becomes whether Appellee was precluded from seeking its own claim for damages against Appellants because of this settlement.

. Appellants contend that the case of *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626 (Ky.App.1990), while not directly on point, is dispositive of this case. *State Auto.* concerned the liability of a third-party tortfeasor to the lienholder of an automobile when the vehicle had been destroyed and the tortfeasor's insurance carrier had settled with the vehicle's owner and taken possession of the salvage without recognition of·the lienholder's interest. With no binding authority on point, this Court considered authority from other jurisdictions and ultimately decided to follow the reasoning provided in *International Harvester Credit Corp. v. Valdez*, 42 Wash.App. 189, 709 P.2d 1233 (1985) and *Scholfield Bros., Inc. v. State Farm Mut. Auto. Ins. Co.*, 242 Kan. 848, 752 P.2d 661 (1988). Those decisions "reject[ed] the idea of imposing liability upon a third-party tort-feasor's carrier for making payment to the owner of the vehicle in disregarding of a perfected security interest" and instead held that "in absence of fraud or collusion, settlement by a wrongdoer may be made to either the owner (mortgagor) or the security holder (mort-

---

4. Appellee asserts that the mortgage agreement with the Masons gave it the actual title to the subject property. However, Appellee fails to explain why, then, it was compelled to repurchase the property at sale following foreclosure. Consequently, we will address this assertion no further.

gagee) with impunity as the one receiving payment must hold the funds in trust for application according to the respective rights of the mortgagor and mortgagee." *State Auto.*, 792 S.W.2d at 628–29.

■ Citing to *Valdez*, we supported this conclusion by reasoning that "a tort-feasor is entitled to one settlement and that the settling party holds the proceeds in trust for the secured party" because "the purpose of perfecting a security interest is protection of the secured party against creditors, transferees and creditors' representatives in insolvency, and a tort-feasor is not within the class of those subject to record notice." *Id.* at 629. We further noted:

> [N]either the UCC nor sound public policy warrants an elevation of security interests above the good to be gained from quick settlement by wrongdoers for damage done to fellow citizens. A requirement that a wrongdoer or his insurance carrier become embroiled in satisfaction of security liens would, in our view, have a chilling effect on prompt settlements.

*Id.* *State Auto.* stands for the proposition that a mortgagor is entitled to settle an automobile property-damage claim against a third-party tortfeasor, notwithstanding that a lien exists in favor of another. If a mortgagor settles the claim, he or she is obligated to hold the resulting proceeds in trust for the mortgagee. As such, the mortgagee is not without a remedy.

Appellants contend that we should apply the same logic with respect to a real-property damage claim. In further support of their contention, they cite to the decision of the Supreme Court of Utah in *Stevensen v. Goodson*, 924 P.2d 339 (Utah 1996), which held that "a nonfraudulent settlement or recovery by the mortgagor from the third party tort-feasor precludes a recovery by the mortgagee" and recognized (while not explicitly adopting) the principal that "[w]hen the mortgagor receives the recovery or settlement proceeds, he must hold it in trust for the mortgagee to the extent of the outstanding debt." *Id.* at 351. The Utah court reasoned, citing public policy concerns, that "when a third party's act damages property, there should be only one settlement or cause of action with that party to avoid double payments by that party if the mortgagor absconds with the recovery" and that "third parties should not be placed in a more onerous position than the mortgagor." *Id.*[5]

The reasoning of the Supreme Court of Utah in *Stevensen* is strikingly similar to that in *State Auto.*, and both cases are persuasive on this issue. The fact that *State Auto.* involved a lien on an automobile—and not a real-estate mortgage—is of little consequence. A lien on an automobile is not conceptually dissimilar to a mortgage because "a mortgage is a mere security for debt." *Smith*, 250 Ky. 617, 63 S.W.2d at 800. Appellee argues that this case is nonetheless distinguishable from those decisions because the Masons were in default prior to the settlement of their property-damage claim. Had Appellee taken possession of the subject property or secured a foreclosure judgment prior to settlement, we might agree with this position. As discussed above, however, at the time of settlement the Masons were still the owners of the property. Moreover—and perhaps more importantly—Appellee's president, Jean C. Shields, was fully aware of the property damage *and* of the Masons' efforts to secure compensation for that damage soon after the accident, yet Appellee made no effort to intervene in

5. Like Kentucky, Utah is a "lien-theory" state where "legal title to mortgaged property remains in the mortgagor subject to a lien in favor of the mortgagee." *Bybee v. Stuart,* 112 Utah 462, 189 P.2d 118, 122–23 (1948).

that claim. Under these circumstances and in the absence of any claim of fraud, we can find no justification for requiring Appellants to pay twice for the same act of property damage. We also do not believe that Appellee's other arguments need be addressed; therefore, they are rejected without further comment.

■ Accordingly, we hold that a nonfraudulent property-damage settlement or recovery by a mortgagor from a third-party tortfeasor bars a subsequent recovery by a mortgagee against that same tortfeasor for that same act of property damage. Only one cause of action—and one recovery—arises from such an act. Furthermore, when the mortgagor receives the recovery or settlement proceeds, he must hold it in trust for the mortgagee to the extent of his or her outstanding debt. This is sufficient protection for the mortgagee's security interest in the mortgaged property. Because of our holding, we are compelled to conclude that the circuit court erred by granting summary judgment to Appellee. Consequently, that decision is reversed and this matter remanded for entry of judgment in favor of Appellants as to all issues.

### Conclusion

For the foregoing reasons, the summary judgment entered by the Nelson Circuit Court is reversed, and this matter is hereby remanded with instructions to enter judgment in favor of Appellants as to all issues.

ALL CONCUR.