RENDERED: MAY 14, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0208-MR

SALYERSVILLE NATIONAL BANK                                         APPELLANT


v.
APPEAL FROM MAGOFFIN CIRCUIT COURT
HONORABLE KIMBERLY CHILDERS, JUDGE
ACTION NO. 19-CI-00240


BRANDON RUSSELL AND
TASHA RUSSELL                                                            APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE: The primary question in this appeal is whether the Magoffin

Circuit Court erred in concluding that a mortgage held by appellant Salyersville

National Bank ("the Bank") does not require the mortgagors, appellees Brandon

and Tasha Russell, to assign the Bank their claims against various contractors and

subcontractors for the destruction of their residence which slid down the hill upon

which it was constructed. The Bank also argues that it is entitled to the imposition

of a lien on any damages the Russells recover against the third-party tortfeasors for destruction of its collateral. Because we are convinced that the judgment was based upon an erroneous interpretation of the plain language of the mortgage and relevant caselaw, we reverse the entry of summary judgment in favor of the Russells and remand the case for entry of a judgment in favor of the Bank.

There is no dispute as to the facts. The Russells financed the purchase of a piece of property and the construction of a home in Magoffin County, Kentucky, with loans from the Bank. In September 2016, they executed a mortgage against the property to secure a construction loan and, in September 2017, they signed another mortgage converting the construction loan to a conventional thirty-year mortgage. The ultimate debt on the loan exceeded $678,000.00.

The property in question sits atop a large hill, and the site required significant preparation for the construction of the residence. The excavation company that sold the property to the Russells was hired to excavate the land and create a level building site. Soon after the Russells moved in, the land beneath the residence began to give way causing foundation cracks and sinking. The general contractor installed a supplemental concrete foundation support which did not alleviate the problems. A second foundation company attempted to drive steel pillars into the bedrock to support the residence, but that effort also failed to

correct the problems. Ultimately, the residence began sinking and sliding down the hillside along with the soil and is estimated to be a total loss. The Bank advanced one hundred percent of the funds used to purchase the land, construct the residence, and finance the unsuccessful remediation efforts to address the foundation problems. Thus, the value of the real property assigned to the Bank as collateral for these loans has all but been destroyed by the alleged improper foundation, construction, and remediation work.

In July 2017, the Russells filed suit in Magoffin Circuit Court against the original foundation company that poured the foundation and basement. That company subsequently filed third-party claims against the general contractor and the excavation company. The Russells then amended their complaint to add the second foundation contractor who attempted to remedy the foundation failure by driving steel pillars into the bedrock. The litigation concerning the liability of the various contractors and subcontractors for damages due to the destruction of the Russells' residence remains pending.

The litigation at issue in this appeal stems from the Russells' refusal to assign to the Bank their claims against the various contractors, their denial that they have any duty to apply amounts recovered in those claims against the outstanding balance of their mortgage loan, and their position that their cause of action against the contractors is a personal property interest, a chose in action,

which is not covered by the real estate mortgage. After the Russells filed a petition for Chapter 11 bankruptcy protection in November 2018, the bankruptcy judge directed the parties to seek a declaratory judgment in state court to determine whether and to what extent the Bank's mortgage lien attached to their claims against the contractors.

In response to the direction of the bankruptcy court, the Bank filed the underlying action in Magoffin Circuit Court seeking a declaration: 1) that the mortgages between the parties require the Russells to assign to the Bank their claims against the third-party contractors allegedly responsible for the destruction of the Bank's collateral; and 2) that the mortgages give the Bank a lien on any damages recovered against the third-party contactors up to the amount owed the Bank on the underlying loan. Because there was no dispute as to the facts, both the Bank and the Russells moved for summary judgment with respect to an interpretation of the mortgage agreement.

After analyzing the various pertinent mortgage provisions, the circuit court granted summary judgment in favor of the Russells on the basis: 1) that language in Section 1 of the mortgage purporting to convey "all rights" the Russells had in the mortgaged property was insufficient to require assignment to the Bank of their personal property claims against the third-party contractors; 2) that language in Section 7 of the mortgage concerning assignment of claims the

"Mortgagor may have against parties who supply labor or materials to maintain or improve the Property" applied only to things such as adverse title claims, taxes, and materialman's liens; and 3) that nothing in any of the remaining contract provisions included language which would require assignment of any of the Russells' claims against the contractors to the Bank. This appeal followed.

The Bank presses two arguments in support of its contention that the judgment of the circuit court is erroneous: 1) that the circuit court erred in holding the mortgages do not create an affirmative duty to assign to the Bank their claims for destruction of the Bank's collateral; and 2) that under Kentucky law an equitable lien attaches to any proceeds recovered from third parties responsible for the destruction of the Bank's collateral, even without the express language of the mortgages. We agree.

As an initial matter, we address the Russells' contention that the Bank is attempting to relitigate matters which have already been decided adversely to it in their bankruptcy proceeding. A plain reading of the orders of the bankruptcy court dispels any such contention.

> The question is whether the plan is confirmable with the special provision. **I am not required to decide what party has the right to any recovery from the litigation**. The plan is confirmable with the special provision.

> The special provision revests the causes of action for negligence and breach of warranties in the Debtors.

> **The ownership of these causes of action is disputed, but the record shows the state court has not yet addressed the issue**. Therefore, there is at least some interest that has become property of the estate and the estate's interest may be addressed by the plan.
>
> . . . .
>
> **This decision does not decide the ultimate issue: who has the right to the proceeds of the debtor's causes of action. The record shows the bank and debtors are pursuing this question in the state court**. Therefore, confirmation of a plan with a special provision that the addresses the debtors' interest if they are successful does not harm any party.

Opinion and Order of the United States Bankruptcy Court, Eastern District of Kentucky, filed 11/26/2019 (emphases added). It is thus apparent that the ruling of the bankruptcy court made provision for a ruling by the Magoffin Circuit Court concerning the right to the proceeds of the ongoing litigation. Furthermore, the bankruptcy court's conclusion that the negligent construction and breach of warranty claims are personal to the debtors does not preclude assignment of those claims to the Bank in the instant action.

Turning now to the equitable trust claim, we are persuaded that the decision in *Grafton v. Shields Mini Markets, Inc*., 346 S.W.3d 306 (Ky. App. 2011), is dispositive. In *Grafton*, this Court held that when the mortgagor receives a recovery or settlement proceeds from a third-party tortfeasor, "he must hold it in trust for the mortgagee to the extent of his or her outstanding debt" and that such

-6-

an equitable trust "is sufficient protection for the mortgagee's security interest in the mortgaged property." *Id*. at 312. The holding in *Grafton* emphasizes that while a tortfeasor may not be subjected to having "to pay twice for the same act of property damage[,]" obligating the mortgagor to hold the proceeds in trust to the extent of a lien likewise protects a mortgagee from being left without a remedy. *Id*.

The circuit court refused to apply *Grafton* to the facts of this case on the basis that *Grafton* involved a case which had already been settled. We are convinced that holding is clear error. Nothing in the *Grafton* analysis restricts its application to cases which have previously been settled. *Grafton* simply and unequivocally holds that once a third-party tortfeasor settles with the mortgagor, the mortgagor is thereafter "obligated to hold the resulting proceeds in trust for the mortgagee" to avoid leaving the mortgagee without remedy for the destruction of its collateral. *Id*. at 311. We therefore hold that, under the authority of *Grafton*, the Russells are obliged to hold the proceeds of their claims against the third-party tortfeasors in trust for the Bank to the extent of its mortgage.

The Bank's second allegation of error centers on the circuit court's interpretation of the mortgage document provisions. The Bank argues that the plain language of those documents requires the assignment of the Russells' claims against the third-party tortfeasors. We agree.

Section 7 of the mortgage agreement between the parties provides:

> 7. **Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. *Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property*.

(Emphasis added.)

The circuit court refused to give effect to this provision, holding:

> Turning to Section 7, when one reads this section in its full context, it obviously applies only to things such as adverse title claims, taxes, and materialman's liens. This is not a case where someone is making a claim against the property. Nowhere is there anything that remotely suggests that the Russells are assigning any cause of action for faulty construction or other claims for damages to property. The only provision about assignment relates to mechanics and materialman's liens. Under the doctrine of ejusdem generis the mortgage clause is limited to things such as taxes, etc., i.e. the clause is to be read narrowly, not broadly.

We are convinced that this conclusion is erroneous for several reasons.

Prior to setting out our rationale for setting aside the circuit court's decision, we reiterate that because the parties agree there are no genuine issues of material fact, we review the circuit court's decision *de novo. 3D Enterprises*

-8-

*Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 445 (Ky. 2005). We thus owe no deference to the circuit court's analysis of the contractual provisions.

Citing *Kentucky Shakespeare Festival, Inc. v. Dunaway*, the Bank argues that the circuit court's analysis does not comport with fundamental principles of contract interpretation:

> Our review must begin with an examination of the plain language of the instrument. "'In the absence of ambiguity, a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."
>
> "When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions." . . . The interpretation of a contract, including determining whether a contract is ambiguous, is a question of law to be determined de novo on appellate review.

490 S.W.3d 691, 694-95 (Ky. 2016) (citations omitted).

The Bank insists that the circuit court's analysis not only fails to apply the plain language of Section 7 regarding the assignment of claims, but also fails to give effect to Section 23 regarding interpretation of the agreement. That section provides in pertinent part that the "captions and headings of the section of the

Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument."

Returning to the circuit court's order, the circuit court stated that "when one reads this section in its full context, it obviously applies only to things such as adverse title claims, taxes, and materialman's liens." Again, the caption for Section 7 reads "**Claims Against Title**." However, when Section 7 is read in its entirety, it unambiguously requires the Russells to "assign to [the Bank] . . . any rights, claims or defenses [they] may have against parties who supply labor or materials to maintain or improve the Property." Clearly, this language cannot be construed as referring to a claim against title. Rather, according that portion of Section 7 its ordinary meaning, we are convinced that a reasonable person would find it susceptible of only one interpretation: that it encompasses a duty to assign to the Bank the kind of claims the Russells are pursuing against the various contractors and subcontractors for damages due to the destruction of their residence and, in turn, the Bank's collateral. Thus, the circuit court was not free to simply ignore the plain and unambiguous language of Sections 7 and 23 of the mortgages.

Accordingly, because we are convinced that the circuit court misconstrued the plain language of the mortgage agreement and clearly erred in applying settled caselaw to the undisputed facts of this case, we reverse the entry

-10-

of judgment in favor of the Russells and remand the case for entry of an order granting the Bank's motion for summary judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

John T. Hamilton
Lori B. Shelburne
Lexington, Kentucky

BRIEF FOR APPELLEES:

Eldred E. Adams, Jr.
Louisa, Kentucky