RENDERED: SEPTEMBER 30, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1131-MR

BINGHAM GREENEBAUM DOLL
LLP                                                                APPELLANT


APPEAL FROM GALLATIN CIRCUIT COURT
v.          HONORABLE JAMES R. SCHRAND, JUDGE
ACTION NO. 14-CI-00055


CUT-N-SHOOT LLC AND
MEREDITH L. LAWRENCE                                        APPELLEES

AND


NO. 2020-CA-1217-MR


MEREDITH L. LAWRENCE AND
CUT-N-SHOOT, L.L.C.              APPELLEES/CROSS-APPELLANTS


CROSS-APPEAL FROM GALLATIN CIRCUIT COURT
v.          HONORABLE JAMES R. SCHRAND, JUDGE
ACTION NO. 14-CI-00055

BINGHAM, GREENEBAUM, DOLL
L.L.P, D/B/A DENTONS BINGHAM
GREENEBAUM, L.L.P                        APPELLANT/CROSS-APPELLEE

AND

NO. 2021-CA-0320-MR

CUT AND SHOOT, L.L.C. AND
MEREDITH L. LAWRENCE                          APPELLANTS

APPEAL FROM GALLATIN CIRCUIT COURT
v.        HONORABLE JAMES R. SCHRAND, JUDGE
ACTION NO. 14-CI-00055

BINGHAM, GREENEBAUM, DOLL,
L.L.P.                                          APPELLEE

OPINION
AFFIRMING IN PART AND REVERSING AND REMANDING IN PART

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  Bingham Greenebaum Doll, LLP ("Bingham")

appeals from the Gallatin Circuit Court's orders, entered on April 24, 2020, and

August 21, 2020, arguing that the court erred in finding that an attorneys' fee

agreement between Bingham and Meredith L. Lawrence ("Lawrence") for a flat

fee secured by a mortgage on real property failed to comply with Supreme Court

Rule ("SCR") 3.130(1.8)(a) ("Rule 1.8(a)").

Because we conclude that Lawrence was given a reasonable

opportunity to seek the advice of independent legal counsel on the transaction and

that Bingham did not take an interest in Lawrence's property for more than the

agreed-upon legal fees, we reverse the circuit court's judgment and remand to

enforce the mortgage held by Bingham. We affirm on cross-appeal.

Lawrence also filed a direct appeal from various Gallatin Circuit

Court orders entered on December 15 and 16, 2020, and March 2, 10, and 15,

2021, alleging various claims of error. This Court has consolidated Bingham's and

Lawrence's appeals. Finding no error as to Lawrence's direct appeal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Litigation between Bingham and Lawrence has reached the Kentucky

Supreme Court multiple times. We turn to the most recent Supreme Court opinion

for a summary of the facts applicable in this matter:

> In 2008, Lawrence retained Bingham attorney J. Richard
> Kiefer to defend him against federal tax-evasion charges.
> At some point in the representation, the parties agreed to
> revise their original fee agreement because Lawrence had
> fallen behind in his payments. The new agreement stated
> that Lawrence would pay a flat fee of no less than
> $450,000 the principal not to exceed $650,000.
> Lawrence agreed to secure his payment with a mortgage

-3-

on real estate he owned, and he signed a promissory note evidencing his debt.

Lawrence was convicted of three counts of filing false tax returns. He then sued Kiefer and Bingham, among others, in Kenton Circuit Court for legal malpractice. Because Lawrence had not paid for a portion of the legal services provided to him, Bingham filed a counterclaim to recover its fee; specifically, Bingham sued for enforcement of the promissory note. The Kenton Circuit Court dismissed Lawrence's malpractice claim and granted default judgment to Bingham on its counterclaim. [The Kentucky Supreme Court] upheld the judgment. [*See Bingham Greenebaum Doll, LLP v. Lawrence*, 567 S.W.3d 127, 131 (Ky. 2018) ("*Lawrence I*")].

Simultaneously occurring with the Kenton Circuit Court case, Bingham sued Lawrence in Gallatin Circuit Court to foreclose on the property Lawrence agreed to mortgage as security on his debt for Bingham's services [(the "Marathon Property")]. Gallatin County was the chosen venue for this action because the [Marathon Property] was situated in that county. Lawrence counterclaimed for legal malpractice.

Also occurring simultaneously with the above two cases was a collateral attack on his conviction that Lawrence filed in federal court based, in part, on a claim of ineffective assistance of counsel. The federal court ruled against Lawrence on his ineffective-assistance-of-counsel claim and issued its final order before the resolution of the Kenton and Gallatin cases.

In the Gallatin Circuit Court foreclosure action, Bingham moved for summary judgment, which the trial court granted. Then, upon Bingham's motion, the trial court entered an order of sale. After several further procedural steps, the [Marathon Property] was sold, and

the sale was confirmed by the trial court on May 30, 2018.

*Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 819-20 (Ky. 2019) ("*Lawrence III*") (footnotes omitted).

Lawrence appealed the Gallatin Circuit Court's order confirming the sale, which was eventually transferred to the Kentucky Supreme Court. Following briefing, the Supreme Court vacated the summary judgment and remanded the case to the Gallatin Circuit Court to hear evidence regarding Bingham's compliance with Rule 1.8(a). *Lawrence III*, 599 S.W.3d at 829.

In its opinion, the Supreme Court said the following: "The only specific argument Lawrence makes . . . that has possible merit and that is not barred by claim or issue preclusion is whether Kiefer violated [Rule 1.8(a)] by taking a possessory interest in Lawrence's property and by taking a property interest, the value of which exceeded the fees owed." *Id.* at 827. The Court further stated:

> We find no evidence in the record to resolve the issue of whether the "transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client[.]" Nor is there anything in the record resolving the issue of whether Lawrence was "advised in writing of the desirability of seeking and [was] given a reasonable opportunity to seek the advice of independent legal counsel on the transaction." . . . These are issues that must be resolved by the trial court before summary judgment can be granted.

-5-

*Id*. at 828-29.

On remand, the circuit court held an evidentiary hearing regarding the Rule 1.8(a) issues raised by the Supreme Court. Kiefer, Lawrence, and their respective experts testified. In its April 24, 2020, order, the circuit court acknowledged the Supreme Court's recent opinion and the prior findings made by the Supreme Court. As for the remaining Rule 1.8(a) questions, the circuit court found that (1) the transaction and terms were fair and reasonable to Lawrence per Rule 1.8(a)(1); (2) Kiefer had advised Lawrence in writing of the desirability of seeking the advice of independent legal counsel on the transaction per Rule 1.8(a)(2); and (3) it could not make a summary judgment decision as to whether Lawrence was given a reasonable opportunity to seek the advice of independent legal counsel per Rule 1.8(a)(2). For this last question, the circuit court reasoned that "negotiations" were ongoing immediately prior to the pending June 2012 trial.

The circuit court also found that Bingham took a security interest in an amount greater than the legal fees and expenses owed. The court based its holding on language in the promissory note that accounted for the possibility that Lawrence could owe up to $650,000 in fees if the trial was continued for four months or more and language in the mortgage referencing that the highest aggregate amount which the mortgage could secure was $1 million.

With these holdings, the circuit court denied Bingham summary judgment, vacated the prior orders regarding the sale and confirmation of sale of the Marathon Property, and ordered the Special Master Commissioner to deed the Marathon Property back to Lawrence. The circuit court also made its order final and appealable.

Bingham timely filed a Kentucky Rule of Civil Procedure ("CR") 59.05 motion to alter, amend, or vacate. In its motion, Bingham argued that, because the Supreme Court remanded the case to the circuit court for it to resolve genuine issues of material fact, the circuit court should have weighed the evidence and testimony presented at the hearing in accordance with the preponderance of the evidence standard and should not have continued to employ the summary judgment standard, as no such motion was pending. Bingham further argued that it did not take a possessory interest in the Marathon Property for more than the agreed-upon fee and that Lawrence had been given reasonable time to consult an attorney in compliance with Rule 1.8(a).

Lawrence did not file a CR 59.05 motion concerning the April 2020 order or otherwise contest the Marathon Property being deeded back to him at that time.

The circuit court denied the motion to alter, amend, or vacate in part, but also added the following language in its order: "[B]ased on the testimony and

evidence presented at the Hearing, as well as argument from counsel, the Court finds Bingham took a possessory interest in the Marathon Property for more than the agreed-upon fee, and that Lawrence was not given a reasonable time to consult with independent counsel." Thereafter, Bingham filed this appeal.

We will discuss more facts as they become relevant herein.

## ANALYSIS

### a. Bingham's Appeal

#### 1. Appealable Order

We first note Lawrence argues that Bingham's appeal is improper because it is from an interlocutory denial of a summary judgment. Bingham contends that the circuit court's order is final and appealable because it contained the recitations necessary under CR 54.02 regarding a judgment upon multiple claims or involving multiple parties.

As stated by a panel of this Court, "[i]t is well settled in this Commonwealth that the denial of a motion for summary judgment is interlocutory and is not appealable." *Roman Catholic Bishop Of Louisville v. Burden*, 168 S.W.3d 414, 419 (Ky. App. 2004) (citations omitted). Generally, the denial of summary judgment is not "a final adjudication upon one or more of the claims in litigation . . . [nor does it] conclusively determine the rights of the parties in regard to that particular phase of the proceeding." *Hale v. Deaton*, 528 S.W.2d 719, 722

(Ky. 1975). Instead, "[a]n order denying a motion for summary judgment ordinarily does not finally adjudicate anything, as the party whose motion was denied may still prevail at trial." *Medcom Contracting Services, Inc. v. Shepherdsville Christian Church Disciples of Christ, Inc.*, 290 S.W.3d 681, 684 (Ky. App. 2009) (citation omitted).

However, the order in this case not only denied Bingham summary judgment but also vacated two prior orders of sale and ordered that the Special Master Commissioner prepare a deed for the Marathon Property back to Lawrence. Thus, because Kentucky Rules of Civil Procedure 54.01 defines a "final or appealable judgment" as "a final order adjudicating all the rights of all the parties[,]" and the circuit court's order disposed of and adjudicated all the rights of all the parties regarding that particular phase of the proceeding, "the result of the . . . order left nothing to adjudicate regarding the rights and priorities of the parties." *Security Federal Sav. & Loan Ass'n of Mayfield v. Nesler*, 697 S.W.2d 136, 138-39 (Ky. 1985). Therefore, we will proceed with a review of Bingham's arguments on appeal.

### 2. **Standard of Review**

Before discussing the appropriate standard of review in this case, we note that, while the circuit court stated that it was denying Bingham's motion for summary judgment, the circuit court also held an evidentiary hearing and made

findings of fact in its orders. Our standard of review concerning a court's findings of fact made during an action tried upon the facts without a jury is outlined in CR 52.01, which provides that "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Under Kentucky law, a factual finding is clearly erroneous if it is not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence has been defined as "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972) (internal quotation marks and citation omitted).

However, while deferential to the lower court's factual findings, appellate review of legal determinations and conclusions from a bench trial is *de novo*. *Sawyers v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012).

### 3. <u>Whether Lawrence Had a "Reasonable Opportunity" to Seek the Advice of Independent Legal Counsel</u>

In its April 24, 2020, order, the circuit court found that Lawrence was not provided with a reasonable time to consult with independent counsel. Rule 1.8(a) states, in pertinent part, that "[a] lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless . . . (2) the client . . . is given a

-10-

reasonable opportunity to seek the advice of independent legal counsel on the transaction[.]"

In this case, we disagree with the circuit court's conclusion that Lawrence was not given a reasonable opportunity to seek the advice of independent legal counsel on the transaction. "The opportunity to seek independent advice must be real and meaningful. It is not enough that at some moment in time an opportunity existed no matter how brief or fleeting that opportunity might have been." *Valley/50th Ave., L.L.C. v. Stewart*, 153 P.3d 186, 190 (Wash. 2007) (en banc) (citation omitted). Moreover, "[t]he definition of a 'reasonable opportunity' may depend on the circumstances of any given case, but it will always mean more than the mere physical ability to contact an attorney." *Id.* at 191.

On this point, Lawrence's testimony during the evidentiary hearing is the best evidence. For example, Lawrence testified that in December 2011 and February 2012, he consulted with other attorneys in his office regarding the proposed arrangement when Kiefer recommended him in writing to do so. Lawrence undeniably had a "reasonable opportunity" to consult with other attorneys when he *did* consult with other non-Bingham attorneys on at least two separate occasions about moving to a flat fee arrangement secured by collateral.

-11-

Additionally, the parties' discussions and negotiations concerning fee issues continued throughout the months of December, January, February, and March. The negotiations culminated with Lawrence confirming his agreement to all of the terms in a letter memorializing the parties' written agreement dated April 2, 2012, and signed by Lawrence on April 3, 2012. That period of four months certainly gave Lawrence a "reasonable opportunity" to consult with independent counsel concerning the arrangement. Moreover, Lawrence, an attorney and businessman, participated actively in the discussions concerning the changes to the fee agreement and securing payment with a mortgage for at least four months with Bingham. Lawrence also had the opportunity to review the written letter agreement, promissory note, and mortgage documents, commenting on and revising them on at least two different occasions in March and April 2012 before signing them months later in June and July 2012.

The circuit court erred when it focused on the time between when Lawrence signed the mortgage and promissory note in June and July 2012 and the trial date in June 2012. In doing so, the circuit court overlooked that there were no additional negotiations concerning – or revisions to – either document after April 2012 other than a change to the property description of the Marathon Property. The circuit court correctly recognized that no additional correspondence between the parties was admitted into evidence for the time between April and June 2012

about negotiations concerning the change in fee arrangement. However, the record reflects that the absence of evidence was because there were no further negotiations during that period. Moreover, Lawrence has provided no evidence that Bingham attempted to change the agreement's terms materially or substantively after the parties reached an agreement in April 2012. Therefore, the record and Lawrence's conduct indicate that during the period of substantive discussions and negotiations of the fee agreement, Lawrence was provided with "real and meaningful" opportunities to consult with an independent attorney. *Stewart*, 153 P.3d at 191.

Moreover, the fact that Lawrence sought and obtained independent legal advice during the negotiation period is evidence that he knew he could obtain independent advice at *all* stages of the negotiations, including up until he signed the mortgage. Rule 1.8(a) requires that the client be "given a *reasonable* opportunity to seek the advice of independent legal counsel on the transaction[.]" (Emphasis added.) Lawrence's conduct demonstrated that he both knew he had the opportunity to seek the advice of independent counsel and took advantage of that opportunity. Thus, we reverse the circuit court and find that Lawrence was given a reasonable opportunity to consult with independent legal counsel.

-13-

### 4. Whether the circuit court Mistakenly Interpreted the Amount of Bingham's Security Interest

Bingham argues that the circuit court made two mistakes when analyzing Bingham's security interest in the Marathon Property. The first alleged mistake was that the circuit court did not recognize that Bingham only had a security interest – and not an ownership or possessory interest – in the Marathon Property. The second alleged mistake was that the circuit court did not recognize that the amount of Bingham's security interest in the Marathon Property was no greater than the flat fee agreed to by Lawrence.

In this case, the arrangement is a "security . . . interest adverse to a client" as contemplated under Rule 1.8(a). Indeed, "Kentucky law has long subscribed to the 'lien theory' of mortgages and holds that a mortgage is a mere security for debt, and that, . . . the mortgagor is the real owner of the property mortgaged." *Grafton v. Shields Mini Markets, Inc.*, 346 S.W.3d 306, 310 (Ky. App. 2011) (some internal quotation marks and citations omitted). Therefore, "*mortgages are treated no differently than any other lien* and, generally, mortgagors – not mortgagees – are considered the owners of mortgaged property." *Id*. (emphasis added) (footnote omitted).

However, although the arrangement in this case was a "security interest adverse to a client" as contemplated under Rule 1.8(a), the result was not that the arrangement automatically violated Rule 1.8(a). Rather, the parties were

required to comply with the requirements of Rule 1.8(a). This is illustrated by another Kentucky Supreme Court rule, which states that while "[a] lawyer shall not acquire a proprietary interest in the . . . subject matter of litigation the lawyer is conducting for a client," a "lawyer may . . . acquire a lien authorized by law to secure the lawyer's fee or expenses[.]" SCR 3.130(1.8)(i)(1). Thus, the Rules contemplate that, under the correct circumstances, and when done in compliance with the Rules, an attorney may take out a lien even on the subject matter of litigation the lawyer is conducting for a client to secure the lawyer's fees. Therefore, Bingham did not automatically violate Rule 1.8(a) by using a mortgage of the Marathon Property to secure the payment of its legal fees.

Additionally, the record reflects that Bingham did not have a security interest in Lawrence's property for more than what Lawrence owed to Bingham. The promissory note and mortgage only permitted Bingham to collect what Lawrence owed under the parties' letter agreement, as referenced in the promissory note. Indeed, the promissory note was not for a flat fee of $650,000 but for "up to (and not to exceed)" $650,000 as provided in the parties' letter agreement, which the note specifically referenced.

Moreover, the circuit court found the "future advance clause" in the mortgage problematic. Such clause stated that the mortgage would secure "up to (and not exceed) the maximum aggregate amount of $1,000,000.00[.]" However,

by its terms, the mortgage only secured the amount Lawrence owed and nothing more. Instead, and only in the event of any additional indebtedness, the aggregate maximum amount capped the potential total security interest at a maximum of $1,000,000.00, giving Bingham priority over any subsequent lienholders up to that amount. Moreover, Kentucky statute explicitly authorized such language. *See* Kentucky Revised Statute ("KRS") 382.520(2). As stated in *First Commonwealth Bank of Prestonsburg v. West*, "future advance clauses . . . are valid in Kentucky. . . . It is sufficient if the mortgage clearly shows it is to stand as security for both an original loan and for such additional indebtedness as may arise from future dealings between the parties." 55 S.W.3d 829, 833 (Ky. App. 2000) (internal quotation marks and citations omitted). In this case, the language did not state that Lawrence owed the amount listed under the maximum aggregate amount, and Bingham did not have any ability to collect more than Lawrence owed under the parties' agreement.

### 5. Conclusion

Thus, because we conclude that the parties' arrangement met the requirements of Rule 1.8(a), we reverse the circuit court's judgment and remand to the circuit court for the enforcement of the mortgage on the Marathon Property.

### b. Lawrence's Cross-Appeal

Lawrence frames his cross-appeal in the following terms: "Gallatin circuit court first correctly enforced the mandate, then, departed and exceeded the mandate and its jurisdiction/authority, unwinding a final-confirmed judicial sale and approved judicial deed that had finally conveyed [the Marathon Property] to a non-party as was requested by [Bingham]."

As previously discussed, in denying Bingham summary judgment, the circuit court vacated its previous order of sale of the Marathon Property and fixtures and ordered the Special Master Commissioner to prepare a deed conveying the Marathon Property back to Lawrence. Lawrence takes issue with the circuit court's actions in his cross-appeal. Lawrence also includes arguments concerning conversion and the deed he received as part of his cross-appeal. However, the circuit court did not rule on these claims until October and December 2020 at the earliest, while Lawrence filed the notice of appeal for his cross-appeal on September 29, 2020. Thus, we decline to address the issues raised by Lawrence on cross-appeal.

### c. Lawrence's Direct Appeal

Lawrence's direct appeal involves the circuit court's decisions from September 2020 to March 2021. In October 2020, the circuit court held that Lawrence was not entitled to "damages" or "liquidated fair market value" but

-17-

rather restitution of the net benefits Bingham "received during the time it owned the Marathon Property." The circuit court further held that Bingham had not converted the Marathon Property and that Bingham was not required to repay the attorneys' fees Lawrence had already paid to Bingham.

Thereafter, the circuit court denied Lawrence's motion for reconsideration of its October 2020 order in an order dated December 15, 2020. The circuit court reiterated that restitution was the appropriate remedy in this case and found no grounds to alter its previous decisions. Similarly, in another order entered on December 15, 2020, the circuit court denied Lawrence's CR 59.05 motion as to the circuit court's August 2020 order. Specifically, the circuit court denied Lawrence's attempt to assert claims based on "deficient performance" issues, stating "[t]he Court has addressed [Lawrence's] arguments in previous Orders and will not do so again. The Court finds no grounds for which to change its previous decision." Moreover, the circuit court found no basis for a claim necessitating Bingham to repay attorneys' fees previously paid by Lawrence to Bingham.

Additionally, on December 16, 2020, the circuit court entered a final order instructing the Special Master Commissioner to sign the deed consideration certificate and file and record the deed for the Marathon Property with the county

clerk. This order was needed because Lawrence returned the deed to the Special Master Commissioner unsigned rather than signing and filing the deed himself.

Thereafter, the circuit court denied numerous other motions filed by Lawrence. Lawrence filed his notice of appeal on March 18, 2021.

Lawrence first argues that the circuit court erred in dismissing his counterclaims based on the "Exoneration Rule." However, the Kentucky Supreme Court in *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 141 (Ky. 2018) ("*Lawrence II*") and *Lawrence III* barred any of Lawrence's claims based on Bingham's alleged "deficient performance." In *Lawrence II*, the Supreme Court affirmed this Court's application of the "Exoneration Rule," finding that the circuit court properly dismissed a 2015 complaint by Lawrence founded on Bingham's alleged professional negligence in its former representation of Lawrence. *See Lawrence II*, 567 S.W.3d at 135. The Supreme Court concluded that, "[b]ecause Lawrence failed to allege that he had been exonerated of his convictions through post-conviction proceedings, the trial court correctly dismissed his legal malpractice claim without prejudice." *Id.* at 141.

Moreover, in *Lawrence III*, the Supreme Court held that issue preclusion barred any argument Lawrence subsequently made based on claimed deficient performance by Bingham. 599 S.W.3d at 825-26. As noted by the Supreme Court, "[w]hether [Bingham's] performance in representing Lawrence

was deficient is an issue that has already been litigated" in the criminal proceeding when Lawrence filed a motion to set aside his conviction based on allegations of ineffective assistance of counsel. *Id.* at 825. "Neither the federal magistrate judge nor the federal district judge found any hint of deficient performance on [Bingham's] part." *Id.* at 824-25. Therefore, Lawrence is barred from rearguing the matter.

Lawrence next argues that the promissory note and mortgage between the parties "encumbered, clouded and slandered" title on the Marathon Property. However, claims founded on the promissory note were addressed by the Supreme Court in *Lawrence I* and *Lawrence III*, with judgment in Bingham's favor. Indeed, the Supreme Court in *Lawrence I* found that Bingham was entitled to judgment on the promissory note, and the Supreme Court reiterated such finding in *Lawrence III*. *See Lawrence I*, 567 S.W.3d at 131; *Lawrence III*, 599 S.W.3d at 826 ("Because all the elements of claim preclusion are satisfied here, Lawrence's challenge on the amount of attorneys' fees owed, i.e.[,] the enforceability of the promissory note, is precluded. Any argument made by Lawrence seeking to renege on his obligation owed per the promissory note is barred by claim preclusion.").

Moreover, no court has ever determined that Bingham's mortgage on the Marathon Property was invalid. All that the Supreme Court in *Lawrence III*

required the circuit court to address regarding the mortgage was to conduct further proceedings regarding the Rule 1.8(a) analysis. 599 S.W.3d at 828-29. Moreover, the circuit court's determination that Bingham was not entitled to summary judgment on its foreclosure claim did not equate to a final judgment regarding the mortgage's validity.

Indeed, almost every argument Lawrence makes in his appeal is based on the incorrect claim that the Supreme Court in *Lawrence III* "preserved" affirmative claims for Lawrence. However, the only defense that Lawrence gained from *Lawrence III* was that Bingham's mortgage on the Marathon Property may not be enforceable. *See Lawrence III*, 599 S.W.3d at 828. The Supreme Court unambiguously stated that a violation of the ethical rules does not create a private right of action. *Id*.

Lawrence next argues that Bingham converted certain business fixtures at the Marathon Property and therefore deserves damages. However, in this case, the equitable principles of restitution apply, and parties like Bingham are not subject to liability or damages when prior judgments in their favor are later deemed erroneous or vacated. *See Bridges v. McAlister*, 106 Ky. 791, 798, 51 S.W. 603, 605 (1899) ("When a judgment is reversed, restitution must be made of all that has been received under it, but no further liability should in any case be imposed."). In ordering both the Marathon Property and the fixtures to be deeded

back to Lawrence, along with any of the net benefits Bingham received from the Marathon Property during the time it collected the rents and paid the expenses, the circuit court followed the proper principles of restitution. *Id.*

Lawrence also makes arguments concerning the amount of damages Bingham owes him and the fair market value of the Marathon Property. However, because we have found that Lawrence has no valid claims to pursue, such arguments are moot, and we decline to address them. Moreover, the amount of monetary restitution is not before this Court. The circuit court determined such an amount in a November 2021 order, and Lawrence filed his direct appeal's notice of appeal on March 18, 2021. Thus, such amount is not an issue in any of the appeals before the Court in this matter.

Finally, Lawrence argues that he should receive compensation or damages for alleged maintenance issues relating to the Marathon Property. However, Lawrence did not file a motion requesting such compensation until April 27, 2021, after the date that he filed his notice of appeal in this matter. Thus, such issues are not properly before this Court.

Thus, for the foregoing reasons, we affirm the circuit court as to all claims raised in Lawrence's direct appeal.

## CONCLUSION

We reverse the circuit court's April 24, 2020, order and remand for the enforcement of the mortgage on the Marathon Property. We affirm the circuit court as to the issues Lawrence raised on cross-appeal and direct appeal.

ALL CONCUR.

BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Aaron A. VanderLaan
Frank K. Tremper
Covington, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT MEREDITH
L. LAWRENCE:

Meredith L. Lawrence, *pro se*
Katy Lawrence
Warsaw, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Frank K. Tremper
Covington, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Meredith L. Lawrence, *pro se*
Warsaw, Kentucky